# Chicago & Alton R. R. Co. v. Ferdinand Winters, Jr.

1. RAILROAD COMPANIES—*Duty Toward Stockmen.*—Where stockmen accompanying their stock to market are required to change from one train to another, the company is bound to use reasonable care in providing them with a safe opportunity of alighting from the train in which they are and entering the other in which they are to continue the trip, and if they are induced by the conductor to enter a place of danger, and are injured without the want of due care on their part, the company is liable.

2. SAME—*What Information a Passenger May Rely Upon.*—A passenger may rely upon the information or suggestion given him by the conductor of the train on which he is riding, and so far as the conductor is within the apparent scope of his authority the railroad company is bound by his act, and will be responsible accordingly.

3. SAME—*Speed of Trains in Violation of Ordinances.*—The running

of trains by a railroad company in incorporated towns and cities at a greater rate of speed than is allowed by the ordinances, is *prima facie* negligence, and where such speed is the approximate cause of an injury the company will be liable.

4.  ORDINANCES—*Proof of Publication.*—A book of ordinances entitled " Charter and Revised Ordinances of the City of Bloomington, with the Statutes of the State of Illinois and Constitutional Provisions Relating to the City of Bloomington," etc., purporting to be published by the authority of the city council, is sufficient to entitle it to be received as evidence of the passage and publication of such ordinances under Sec. 4, Chap. 24, R. S., entitled " Cities, Villages and Towns."

5.  INSTRUCTIONS—*Tests to be Applied in Considering the Credit to be given to Witnesses.*—An instruction which in a general way advises the jury of tests to be applied in considering the credit to be given to witnesses, such as their intelligence, means of knowledge, manner of testifying, relationship to the parties, if shown, feeling, interest, or partiality for or against either of the parties, etc., is proper.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed June 24, 1896.

RINAKER & RINAKER, attorneys for appellant.

ANDERSON & BELL, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action on the case by appellee against appellant.

The declaration contained six counts, of which the third and sixth only were left standing.

The third alleged that appellee was lawfully and by invitation of appellant, on the grounds of appellant within the corporate limits of the city of Bloomington, at a point between Mason street and Washington street; that by ordinance of said city it was made unlawful for appellant to run its passenger trains at a greater speed than ten miles per hour or its freight trains at a greater speed than six miles per hour, at the point where the injury occurred; that appellant ran its passenger train within the corporate limits, subject

to such restriction, at a greater speed than ten miles per hour, and that appellee was on the grounds of appellant by the invitation of appellant, and while using due care for his own safety was knocked down, injured, etc., by reason of the excessive speed of such train.

The sixth charged that appellee was a passenger on appellant's car, to be carried from Nilwood to Chicago, and it was the duty of appellant to safely convey and keep appellee from all unnecessary danger, and not to expose him to needless perils; that while appellee was so a passenger at Bloomington, and on the grounds of appellant's railroad, appellant, by its agents, invited him to alight from said train of cars at a time and place of needless peril, the appellant knowing, and appellee not knowing of the perils of that time and place; that the appellee thereupon alighted from said train on the grounds of appellant at the invitation and suggestion of appellant, and that upon so alighting at such place, and while using due care to guard against injury he was then and there thrown down or caused to fall down by the motion of certain rapidly moving trains of appellant or by swift currents of air set in motion by such train, etc., and was thereby injured.

A plea of not guilty was interposed to these counts and upon a trial by jury the plaintiff recovered a verdict for $4,750. Motions for new trial were made and overruled and judgment followed, from which the present appeal is prosecuted.

The case, as made by the proof, was in substance that on December 12, 1893, the plaintiff shipped over defendant's railroad a carload of sheep from Nilwood to Chicago and that he went upon the same train as a passenger. He rode in the caboose.

At other points, other cars of stock were put into that train and the owners of such stock also became passengers and were in the same caboose. As the train approached Bloomington the conductor inquired of the stock men whether they wished to take lunch there. It was customary to make such inquiry, the reason seeming to be that

another conductor would take charge at that point and it was desirable that he might know there were stock men taking lunch who were to go with him, the caboose being changed at that point.

This train reached Bloomington about 9:45 p. m. It stopped, and according to the testimony of the plaintiff some one of the stock men asked the conductor how long it would wait, to which he replied, "Ten or fifteen minutes. If any of you gents want to get supper you had better get off here and walk up. It is about a block and a half—you will save time by it. If the train stops again you may be further away from it."

The plaintiff and the other stock men got out and started to walk north along the east side of the train, and directly the train started and moved in the same direction, but not very rapidly. At about the same time a passenger train known as the "Hummer" approached rapidly from the north, on a track just east and about eight feet from the track on which the freight train was moving. When the plaintiff discovered the passenger train it was so near him that he did not attempt to cross the track and he, as well as the others, remained in the space about four feet wide between the two trains moving in opposite directions.

In some way he was thrown to the ground and was so injured that he lost one of his legs and was hurt somewhat in the head. It appears that the passenger train was moving much faster than the freight, and according to some of the witnesses its rate was twenty to thirty miles per hour. Whatever the speed, the position of the plaintiff and the others was a most perilous one.

All of them were more or less affected by the current of air, the noise and confusion, and some of them were thrown down, as was the plaintiff, but he only sustained any injury worthy of mention.

Just how he was thrown down he does not seem to know. The man immediately in front of him, J. W. Smith, was carrying a prod pole some five feet long with which he tried to steady himself by sticking one end of it in the ground,

but something touched him and unbalanced him so that the pole flew up and struck the passenger train and threw him down and it is suggested that this in some way caused the plaintiff to fall.

It is not a matter of much surprise that the plaintiff was hurt, in view of the dangerous position in which he was placed. Indeed the wonder is that some of the others who were similarly imperiled were not hurt also.

The important question is whether the defendant was to blame for the perilous position in which the plaintiff was placed. As to what the conductor said to the stock men just before they got out and started to walk between the tracks in search for lunch, there is great conflict in the evidence. The conductor and brakeman denied that they gave any directions or made any suggestions to the stock men to get off and walk up, and the conductor said that he told them they had better stay on and ride up to the yards, where the other caboose would be found, and it is insisted that the preponderance of the evidence was with the defendant on this point.

We can not say that the jury were without warrant in believing that the conductor did direct, or at least suggest, as alleged by the plaintiff, that the stock men should get out and go up the track as they did.

The conductor admits that he knew the passenger train was due at 9:45, and that it was to pass on the east track; that he did not warn the men of the fact, and that he paid no attention to which side they were getting off, as he supposed they could take care of themselves, though he knew and could have told them that the west side was the safer.

As to the speed of the passenger train, also, the evidence was conflicting, but there is no reason for overruling the conclusion of the jury in that regard. For the present purpose then, it may be assumed, that on these points of conflict the plaintiff is supported by the proof, and the question arises whether the defendant should be held responsible for the injury of the plaintiff. We are inclined to think the answer should be in the affirmative.

The defendant was bound to use reasonable care, at least, to provide the plaintiff with a safe opportunity of alighting from the caboose he was in and entering the other, which he was to take in the continuance of the trip—and he may well be heard to complain, if, while on the premises of defendant, under the circumstances, he was led, through or by the directions of the conductor, into a place of danger, without any want of due care on his own part.

All the circumstances being taken into account, the plaintiff can hardly be chargeable with negligence in following the suggestion of the conductor, and when the latter gave no advice or information as to which side the caboose he should get off, or on which side of the train he should walk, it is difficult to say he was negligent in not ascertaining which was the safer way to go.

It is not unreasonable to say that the action of the conductor led, or at least induced him to take the position of peril where he received the injury of which he complains. A passenger may rely upon the information or suggestion given him by the conductor of a train on which he is riding, and, so far as the conductor acts within the apparent scope of his authority, the railroad company is bound by his act and will be responsible accordingly.

Had the conductor, who knew the passenger train was due, advised the men to walk on the west side, which he knew was the safer, they would have escaped, and so, of course, if he had told them to remain in the caboose, as he says he did, and as the jury found he did not.

But if it be admitted that the defendant can not be charged with having caused the plaintiff to be where he was when he received the injury, it must be clear, that at least the plaintiff was not unlawfully there, and that if, while he was there, he was hurt by reason of any negligence of the defendant, he may complain, provided he was himself free from contributory negligence.

Herein the question as to the speed of the passenger train becomes important. If it was greater than allowed by ordinance the defendant was *prima facie* negligent, and if

this was the proximate cause of the injury there would be liability.

The questions of negligence, as presented by the proofs herein, were for the jury, and we are not impressed with the argument that the verdict is so unsupported by the evidence as to require the interference of this court on that ground.

It is complained that the court erred in admitting proof that the conductor made the remark and gave the directions in question to the other stock men, saying nothing to the plaintiff.

These men were all traveling the same way, and the remark was directed to all. It was so understood and acted upon by all. It was in effect to each, and the evidence was competent as tending to prove the averment of an invitation or direction to the plaintiff.

It is objected that the court permitted the plaintiff to offer in evidence an ordinance of the city of Bloomington, the section read being that set forth in the third count. It does not appear from the abstract that any particular objection was pointed out at the time.

Assuming that an objection now urged is valid it can not be made here for the first time.

A general objection made on the trial will not suffice to support a special objection so presented here. We do not, however, perceive the force of the objection urged, which, as stated in the brief, is that the ordinance providing for the publication of the ordinances of the city, expressly provided that they should be published in a book to be styled, "The Revised Ordinances of the City of Bloomington," whereas the book offered is "Charter, and Revised Ordinances of the City of Bloomington, with the Statutes of the State of Illinois and Constitutional Provisions relating to the City of Bloomington," etc.

Although the book of ordinances may not have been styled precisely as intended by the publication ordinance, yet if it purported to be published by authority of the city council, that was enough. Par. 65, Ch. 24, R. S.

It is urged that the first instruction for plaintiff is erroneous in that it singles out the witnesses for the defendant

and suggests that they should be discredited because they are its employes. The instruction in a general way advises the jury of tests to be applied in considering the credit to be given to the witnesses. Such as their intelligence, means of knowledge, manner of testifying, relationship to the parties if any shown, feeling, interest, or partiality for or against either of the parties so far as may appear, and the corroborating evidence. We see no valid objection to the instruction, nor does it seem to be misleading as suggested by counsel.

It is urged that the court erred in not giving the second and third refused instructions asked by defendant.

The second was faulty in that it was unduly argumentative and that it assumed to say that certain facts would not in law amount to proof of a "negligent invitation" to the plaintiff to alight. The third was faulty in requiring the plaintiff to show an *order* or *direction* given to *him* by the conductor.

It is said in the brief of appellant that the sixth count does not state a good cause of action, but no objection is pointed out, and we are not required upon such suggestion to examine the count in order to ascertain whether it is sufficient to support the judgment.

It is objected that the court refused to submit certain special interrogatories to the jury. Those so refused were as to evidentiary and not as to ultimate facts.

There was no error herein.

No other points are made by the brief. The judgment will be affirmed.