102    347
a200s  280

## Illinois Steel Co. v. Anton Ryska.

1. MASTER AND SERVANT—*Duty of the Master in Furnishing a Place of Safety for His Servant to Do His Work.*—The duty which the law imposes upon a master, requires that he shall exercise reasonable care to provide his servant with a reasonably safe place in which to perform the labors of his employment, and to guard and protect him, while at work in such place, from dangers which might be obviated by a reasonable regard for his safety.

2. SAME—*Employments Attended with Dangers.*—The fact that some employments are attended with dangers which the servant contracts with reference to, does not excuse the master from his primary duty of exercising reasonable care to protect the servant, and he has the right to expect and to rely upon the presumption that the duty of the master will be faithfully performed, and if he receives an injury which he would not have received had the master exercised reasonable care for his safety, the master is liable to respond in damages for such injury.

3. SAME—*When the Servant is Not to be Charged with Contributory Negligence.*—There is a distinction between knowledge of defects and

knowledge of the risks resulting from defects. The servant is not chargeable with contributory negligence if he knows that defects exist, but does not, or can not know, by the exercise of ordinary prudence, that risks exist.

4. SAME—*Where Extraordinary Risks Exist and May Be Encountered.*—Where extraordinary risks may be encountered, if known to the master or should be known by him, the servant should be warned of their character and extent so far as possible.

5. SAME—*The Servant Not Required to Make a Critical Examination of His Surroundings.*—The servant is not required to make a careful and critical examination of his surroundings at the place where· he is directed to work.

6. SAME—*Where an Act is Performed in Obedience to a Command by One in Authority.*—Where an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attended with a degree of danger, it is not necessary that the servant should balance such degree of danger and decide with absolute certainty whether he must do the act or refrain from doing it, and his knowledge of attendant dangers will not defeat his right of recovery, if, in obeying such command, he acts with that degree of prudence which an ordinarily prudent man would exercise under the circumstances.

7. SAME—*Master's Duty to Adopt Precautions Which Will Protect the Servant from Avoidable Dangers.*—When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to adopt such precautions as will protect the servant from avoidable danger.

8. SAME—*The Servant May Assume that the Master Will Not Expose Him to Unnecessary Perils.*—When the master orders the servant to perform his work he has the right to assume that the master, with his superior knowledge of the facts, will not expose him to unnecessary perils, and he may rest upon the assurance that there is no danger, which is implied by such order.

9. SAME—*Obedience is the Primary Duty of the Servant.*—The primary duty of the servant is obedience, and he can not be charged with negligence in obeying an order of his master unless he acts recklessly in doing so.

10. INSTRUCTIONS—*Preponderance of the Evidence Not to be Determined by the Number of Witnesses.*—An instruction that the preponderance of the evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or state of facts, is proper.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed May 23, 1902.

**Statement.**—This is an action on the case brought by Anton Ryska against the Illinois Steel Company to recover for an injury suffered by him on November 9, 1898.

Plaintiff filed a declaration consisting of four counts. He afterward dismissed the fourth count.

The defendant filed a plea of general issue.

The evidence in the case showed that the defendant had upon its plant at South Chicago several blast furnaces for the reduction of iron ore. These furnaces are about eighty or ninety feet high. The accident in question happened on the top of furnace No. 8.

Alongside of furnace No. 8 there was an elevator. The coal, coke and limestone used in the furnaces were brought in barrows to the elevator at the foot of the furnace. The elevator was then raised to the top of the furnace. Men were stationed at the top of the furnace who took these barrows from the elevator and wheeled them on a platform over to the top of the furnaces, a distance of twenty to thirty feet, and dumped the material into the top of the furnaces.

At the top of the furnace is constructed a platform. A roof is built over this platform, and it is enclosed on the sides. At one end of the platform, and about one foot from the elevator, is constructed a shanty, sixteen or eighteen feet long and about seven feet wide.

This shanty was used for the purpose of affording the men a place to "spell off" when they felt the effects of gas which sometimes escaped from the furnace. In this shanty was a stove, a bench, and some blocks of wood upon which the men sat. There were men specially employed to work at the top of this furnace who were inured to the gaseous atmosphere, and could withstand the effects of gas much better than men not accustomed to it. Sometimes, however, these men were unable to endure the gas and were obliged to go down to the ground and recuperate. When this occurred the foreman of appellant supplied their places with other men whom he took from the yard, and who were subject to his authority. The men, however, did

not make shifts without instructions from the foreman. The foreman testified :

"When the men get gased I take them down and let them have fresh air. When these men are down I go to put some help on. When the gas was bad it was part of my duties to shift the men—put on new shifts."

On the 9th day of November, 1896, the gas was unusually strong at the top of furnace No. 8. The foreman himself said that it was so bad that he went up there often, and was obliged to put five extra men on there that forenoon. Appellee was engaged on the ground hauling iron at furnace No. 5, and had never been at work on the top of the furnace, except on two nights previously when he was sent there to do sweeping.

It does not appear, however, that any gas was escaping from the furnace on either of those occasions. The gas did not always escape there, and when it did, it was with varying degrees of intensity. On the morning in question, at about ten o'clock, the foreman came to appellee where he was working at furnace No. 5, and ordered him to go to the top of furnace No. 8 and help haul the buggies of ore and coke from the elevators to the furnace. He did not inform appellee of the conditions prevailing at the top of the furnace, or give any intimation to him whatever of the danger he was likely to meet there, or in any manner offer any explanation or suggestions, or give him to understand that he was at liberty to come down when he felt the effects of the gas. In short, he gave appellee nothing but the peremptory order to go to work there.

Appellee, in obedience to this order, went to the top of the furnace, and the foreman followed in about five minutes thereafter. When the foreman got there he found appellee with his head out of a hole or window in the wall trying to get fresh air. He thereupon ordered appellee to take the place of a man who had been overcome by the gas and brought down to the ground. Appellee complied, and the foreman went away.

In a short time the gas had taken strong hold of appellee,

Illinois Steel Co. v. Ryska.

and in his "gased" condition he went to the shanty which was provided for the men to rest in when affected by the gas. He sat down on a block of wood, which was used there as a stool, and becoming unconscious he fell over on the stove. There was no one in the shanty at the time, and he was afterward found by one of the workmen with his head in the open door of the stove resting on the fire. It also appears in evidence that the furnace was in a defective condition, the hopper being full of holes and bent and warped, and that the bell did not fit the hopper, and that by reason of these defects the gas escaped more freely and in greater volume and intensity than it otherwise would.

One of the counts of the declaration was based upon this defective condition of the furnace.

Upon the trial the jury rendered a verdict for $7,500, and upon a remittitur of $2,500 being filed, the trial court overruled a motion for a new trial entered by appellant, and entered judgment in favor of appellee for the sum of $5,000.

KEMPER K. KNAPP, attorney for appellant.

FRANCIS T. MURPHY and THADDEUS ALLEE, attorneys for appellee; EDWARD C. HIGGINS, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellant states its case in this court in its brief, as follows:

"The defendant in this case alleges that the evidence introduced before the jury failed to prove any negligence on the part of the defendant; that the evidence proved conclusively that the plaintiff assumed the risk of injury from the gas, and was guilty of contributory negligence; that the court erred in refusing to give proper instructions requested by the defendant; in modifying instructions requested by defendant and in giving such modified instructions; in giving improper instructions requested by the plaintiff; in refusing to permit proper evidence offered by the defendant; in improperly limiting the defendant's right to cross-examine the plaintiff's witnesses and in allowing improper evidence on the part of the plaintiff."

The first three of these propositions are, as is apparent, questions of fact. The evidence shows, without dispute, that appellee was taken from his work in a safe place about another furnace on the surface of the ground and ordered by the foreman to go to the top of furnace No. 8, where the fumes of gas were very bad that morning. Nothing was said to him as to whether or not the fumes were bad up there that day, although the foreman knew of the condition.

He had previously been on top of the furnace and had ascertained that the usual number of men were insufficient to spell one another in contending with the escaping gas, and five minutes after having ordered appellee to go to the top of the furnace he followed, and found appellee up there with his head out of one of the windows getting some fresh air. Appellee was then ordered by the foreman to take the place of a workman who had been overcome by the gas, and was then left by the foreman to take care of himself.

After working a time, appellee was overcome by the gas, and made his way to the shanty and sat down. Here he presumably soon became wholly unconscious and fell upon the hot stove, with his head resting in the open stove door, in which place he was later found, shockingly burned.

The duty which the law imposes upon a master requires that he shall exercise reasonable care to provide the servant with a reasonably safe place in which to perform the labors of his employment, and to guard and protect him, while therein at work, from dangers which might be obviated by a reasonable regard for his safety.

The doctrine of assumed risk by the servant, which is appealed to by appellant, was not created for the purpose of relieving the master from his duty in such respects. The fact that some employments are attended with dangers which the servant contracts with reference to, does not excuse the master from his primary duty to exercise reasonable care to protect the servant, and the servant has the right to expect and to rely upon the presumption that the duty of the master will be faithfully performed; and if the servant receives an injury which he would not have

Illinois Steel Co. v. Ryska.

received had the master exercised reasonable care for his safety, the master is liable to respond in damages for the injury.

Thus, in the case at bar, the gas which affected appellee did not always escape from the furnace in great or dangerous quantities. And although appellee may have had a general knowledge that it was at times liable to escape in dangerous quantities, it does not appear that he had any knowledge, information or appreciation of the fact that it existed in overpowering quantities on the morning he was ordered to go up to the top to work. Sometimes it was not hazardous to do the work he was directed to perform. The existence of the gas in dangerous quantities varied much, according to the state of the atmosphere. " Sometimes it would be twice a week and then again it would not be may be for a month."

The record shows it was an extremely dangerous place on the morning in question in which to order men to work, and that the foreman knew it, and that appellee did not know it and it was not made known to him, or appreciated by him.

"There is a distinction between knowledge of defects and knowledge of the risks resulting from such defects. The servant is not chargeable with contributory negligence if he knows that defects exist, but does not know or can not know, by the exercise of ordinary prudence, that risks exist." Illinois Steel Co. v. Schymanowsky, 162 Ill. 469.

It may be assumed that appellee knew something of the dangers of the place where he was ordered to work. But that knowledge did not absolve the appellant from its duty to him. The extraordinary condition that existed with reference to the presence of so much gas was not known to him and was not explained to him, as it ought to have been.

Where extraordinary risks are or may be encountered, if known to the master or should be known by him, the servant should be warned of these, their character and extent, so far as possible. Smith v. Peninsular Car Works, 60 Mich. 505.

"Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman. We think it was properly left to the jury to determine whether appellant's foreman exercised such reasonable and ordinary care to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether appellee knew, or should have known, the danger to which he was exposed." Ross v. Shanley, 185 Ill. 390; Illinois Steel Co. v. Schymanowski, 162 Ill. 447.

"Where an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attendant with a degree of danger, yet in such case it is not requisite that such servant shall balance the degree of danger, and decide with absolute certainty whether he must do the act or refrain from it; and his knowledge of attendant danger will not defeat his right of recovery, if, in obeying the command, he acted with that degree of prudence that an ordinarily prudent man would have done under the circumstances." Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573.

So, in McGovern v. Central Vermont R. R. Co., 123 N. Y. 280, it is said:

"It has been held that reasonable care on the part of a servant in the performance of his work pre-supposes the performance by the master of his duty to do all that reasonably lies within his power to protect the servant while so engaged. (Citing cases.) When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger.

"When the master orders his servant to perform his work, the latter has the right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils; the servant has the right to rest on the assurance that there is no danger, which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he can not be charged with negligence in obeying an order of the master, unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's orders, or whether he acted as a reasonably

prudent person should act, are questions of fact to be determined by the jury." Illinois Steel Co. v. Schymanowski, 162 Ill. 447.   See also, Dallemand v. Saalfeldt, 175 Ill. 310; Consolidated Coal Co. v. Haenni, 146 Ill. 614; Offut v. World's Columbian Exposition, 175 Ill. 472; Chicago & Eastern Ill. R. R. Co. v. Knapp, 176 Ill. 127.

We think we have cited a sufficient number of authorities, and quoted enough from them, to put at rest the contention of appellant that there was no proof of negligence on its part, and that appellee assumed the risk of injury from the gas, and was guilty of contributory negligence.   These were all questions of fact that we are not at liberty to hold existed as matters of law.

Complaint is made by appellant of the giving of the following instructions, viz. :

" The jury are instructed that the preponderance of the evidence in a case is not alone determined by the number of witnesses testifying to a particular fact, or state of facts. In determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing or knowing the things about which they testify; their conduct and demeanor while testifying; their interest, or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements in view of all the other evidence, facts and circumstances proved on the trial; and from all these circumstances determine upon which side is the weight or preponderance of the evidence."

And it is argued that the instruction contains a direct command made upon the jury to determine upon which side is the preponderance of the evidence, by taking into consideration certain specific things, viz. :

1.   The opportunity of the several witnesses for seeing and knowing, etc.

2.   The conduct and demeanor of the several witnesses while testifying.

3.   Their interest, or lack of interest, in the result of the suit.

4.   The probability, or improbability, of their truth in view of the other evidence, etc.

We do not think the instruction is fairly subject to the criticisms urged against it. Meyer v. Mead, 83 Ill. 19; Mitchell v. Hindman, 150 Ill. 538; Chicago & Alton Ry. Co. v. Winters, 65 Ill. App. 435; Eastman v. West Chicago Street R. R. Co., 79 Ill. App. 585.

The modification of certain of appellant's instructions as complained of, were, we think, proper. The first modification that was made, was only for the purpose of making clearer the instruction to which it was applied, and while perhaps not necessary to that end, it did no harm.

The other modifications brought into the instructions the question of the appreciation by appellee of the dangers of working in the place where he was ordered to work, and were properly made, in accordance with what we have already said on that subject.

The remaining questions that are argued, relate to the admission and exclusion of evidence, but raise no novel questions which we think justify a prolongation of our opinion.

The judgment is one that ought to be affirmed, and it is so ordered.

Affirmed.