DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEARS 1914 and 1915.

## Ernest Smiley et al., by Nora Smiley, Appellees, v. Millard Barnes, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Massac county; the Hon. WILLIAM M. CLEMENS, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed November 9, 1914. Rehearing allowed and opinion filed September 1, 1915. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

The declaration in three counts, in substance, alleged that plaintiffs were minor children of the deceased, Will G. Smiley, who was a farmer deriving an income of about $2,000 a year from his farm, by means of which he maintained plaintiffs in a liberal manner, and the deceased came to his death by reason of intoxicating liquor sold to him by defendant, who was alleged to be engaged in selling such liquor in Brookport, by reason of which liquor deceased became

intoxicated and while intoxicated received injuries causing his death, injuring plaintiffs in their means of support. A fourth count contained substantially similar allegations, except that the income of deceased was alleged to be $3,000 per year, derived from his farm and stock raising.

It appeared from the evidence in this case that Will Smiley, father of plaintiffs, was a farmer living near Brookport. That on September 27, 1912, he hauled a wagon load of railroad ties to Brookport and sold them and that after the making of the sale he visited defendant's saloon in Brookport and purchased a drink of whisky. Thereafter he drank four drinks of whisky and some beer at defendant's saloon and purchased half a pint of whisky that he took away with him, and that by three or four o'clock he was intoxicated and started home riding upon the running gears of his wagon. Afterwards he drank more liquor from the half pint purchased and became very badly intoxicated and drove his team at times at a very rapid gait. He had not gone far from Brookport before he fell from his wagon, but again recovered his place and after having driven a short distance further he again fell and at this time his legs caught over the hounds of the wagon, with his head and shoulders dragging on the ground, in which position he was dragged the distance of about ten feet, being at this time much intoxicated. He was carried to one side of the road. About ten o'clock at night a Mr. Edwards discovered him and tried to get him up, but Smiley made so much complaint of pain on being handled that Edwards threw his coat over him and left him alone, and he remained there all night. The next morning Smiley was carried to the home of Edwards. He was cold and sick and could not eat and in a short time his leg began to swell and he began vomiting, which continued until his death. There was no outward appearance of injury to the leg which had swollen very badly. His bowels and kid-

neys were apparently so paralyzed that there was no operation from his bowels, and his urine in small quantities had to be removed by the use of a catheter. Purgatives were used for the bowels but without effect. Different doctors visited him but it seems that none of them were able to give him relief. On October 7th Smiley was taken with bleeding at the nose, which was treated by his physician who on October 9th found the hemorrhage of the nose very profuse and the vomiting almost constant. He plugged the posterior nares with adrenalin gauze but was unable to stop the hemorrhage and Smiley died on the morning of October 10th. There is no evidence or claim of Smiley having drank or procured the liquor at any other place than the saloon of the appellant, and in fact there is no dispute but that the liquors were procured at appellant's saloon, that he became very badly intoxicated, that the vomiting and retching and paralysis of the bowels and kidneys continued from that day until his death. It also appears from the evidence that deceased was of the age of about thirty-four years, and not in the habit of becoming intoxicated; that he was a healthy, able-bodied man, excepting a deafness which had been caused many years ago by cerebral meningitis, and was an active, energetic and reasonably prosperous farmer.

Two of the plaintiffs' physicians testified for plaintiffs that he died of alcoholism. The physicians testifying for defendant said that it could not be definitely told what caused the nose bleed without a post mortem examination. Upon cross-examination of the physicians offered by defendant they, or most of them at least, admitted that vomiting and retching might be the cause of the rupturing of the blood vessel; that increased pressure in the arteries would cause it, and that the obstructed condition of the bowels and kidneys would cause an increased pressure in the walls of the blood vessels, and some of them admitted that the meningitis with which the deceased was afflicted many

years ago might produce a diseased condition of the blood vessels of the head, rendering them brittle and weakened and that in such condition the vomiting and retching, together with the increased pressure of the blood, might cause a rupture of the artery.

COURTNEY, HELM & HELM, F. P. DRENNAN and W. H. NELMS, for appellant.

GEORGE B. BAKER and FRED R. YOUNG, for appellees.

MR. JUSTICE McBRIDE delivered the opinion of the court.

### Abstract of the Decision.

1. INTOXICATING LIQUORS, § 228*—*when evidence sufficient to show intoxication proximate cause of death.* In an action by minor children to recover for injury to their means of support by the death of their father, where such death was the result of personal injuries sustained by deceased while intoxicated as a result of drinking liquor sold to him by defendant, a saloon keeper, where it appeared that as a result of the injuries sustained deceased became sick and vomited and retched constantly, being unable to eat, and his kidneys and bowels being paralyzed, and suffering much pain, and so continued until his death, which was immediately caused by hemorrhage of the nose, evidence *held* to sustain a finding that the proximate cause of his death was intoxication.

2. INTOXICATING LIQUORS, § 247*—*when question whether death due to intoxication for jury.* In an action by minor children to recover for injury to their means of support by the death of their father, which death was the result of personal injuries sustained by deceased while intoxicated, as a consequence of drinking liquor sold to him by defendant, a saloon keeper, the question of proximate cause *held* a question for the jury where it appeared that the immediate cause of death was hemorrhage of the nose, and where the evidence was conflicting whether such hemorrhage was caused by the sickness resulting from the intoxication, or from a weakened condition of the blood vessels of the head due to a previous attack of spinal meningitis.

3. NEGLIGENCE, § 48*—*what constitutes proximate cause of injury.* The proximate cause of injury must be understood to be that which in a natural and continuous sequence, unbroken by any new or independent cause, produces the result and without which the event would not have occurred.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INTOXICATING LIQUORS, § 245*—*when verdict for loss of support not excessive.* In an action by three minor children to recover for injury to their means of support by the death of their father, where such death was the result of personal injuries sustained by deceased while intoxicated as a consequence of drinking liquor sold to him by defendant, a saloon keeper, a verdict for plaintiffs of $3,000 *held* not excessive, where it appeared that plaintiffs were of the age which required education and the ordinary expenses of rearing them, and that deceased was an active and reasonably prosperous man, thirty-four years of age, with an earning power of $1,500 a year, from which he properly supported and provided for plaintiffs.

5. APPEAL AND ERROR, § 1406*—*when verdict will not be disturbed on ground of excessive damages.* A verdict will not be disturbed on the ground of excessive damages where it does not appear that the jury were influenced in assessing damages by sympathy, prejudice or some other improper motive.

6. INSTRUCTIONS, § 104*—*when instruction as to amount of recovery not erroneous.* In an action to recover for death due to defendant's alleged wrongful act, an instruction containing a correct recital of the essential facts to be proven by plaintiffs in order to recover in the action is not open to criticism because it concludes: "Then the law makes it your duty to find said defendant guilty and assess plaintiffs' damages as explained in these instructions.

7. INTOXICATING LIQUORS, § 249*—*when instruction as to proximate cause of death not erroneous.* In an action by minor children to recover for injury to their means of support by the death of their father, as a result of personal injuries sustained while intoxicated as a consequence of drinking liquor sold to him by defendant, a saloon keeper, where the immediate cause of death was hemorrhage of the nose, an instruction that, "If as a natural result of sales deceased became intoxicated and sickened, and that such sickness induced in him an increased strain upon the arteries of the body, whereby an artery was ruptured and he died therefrom, then such sales would be the proximate cause of his death, and this notwithstanding that there might have been at the time a diseased condition of his artery, which rendered it more liable to burst from increased pressure," *held* not improper as invading the province of the jury in determining the question of proximate cause, it appearing that deceased had at one time been afflicted with spinal meningitis, tending to harden the arteries of the head, and that defendant sought to show that the hemorrhage was caused by the weakened condition of the arteries, and the objection not being raised that the elements set forth in the instruction did not con-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

stitute proximate cause and it not being pointed out how the jury could have been misled thereby.

8. INSTRUCTIONS, § 88*—*when instruction on preponderance of evidence sufficient.* The use in an instruction of the words "however slight" in speaking of the preponderance of the evidence does not warrant a criticism of the instruction where the party objecting thereto admits that the use of the words, "if the evidence preponderated but slightly," in the instruction would have been good, there being no material difference between the expressions.

9. INSTRUCTIONS, § 89*—*when instruction sufficiently refers to number of witnesses as basis for determining preponderance of evidence.* An objection to an instruction that it fails to mention specifically the number of witnesses as one of the things to be considered in determining the preponderance of the evidence is not well founded, where it appears from a reading of the whole instruction that the attention of the jury was called to the number of witnesses, among other things to be considered.

10. INTOXICATING LIQUORS, § 221*—*when expert testimony unnecessary to determine proximate cause of death.* In an action by minor children to recover for injury to their means of support by the death of their father, which death was the result of personal injuries sustained by deceased while intoxicated as a result of drinking liquor sold to him by defendant, a saloon keeper, there is no necessity for proving the fact that the proximate cause of the death was the wrongful act of defendant by the expert opinion of doctors where the facts connecting the death with the intoxication can be proven by the persons who attended him.

11. INSTRUCTIONS, § 93*—*when instruction that testimony of expert witnesses should be considered proper.* In an action where both sides introduce the testimony of physicians as expert witnesses, a requested instruction should be given advising the jury that the testimony of such witnesses as a class should be considered by the jury with all the other evidence in the case, although such instruction is faulty in calling the attention of the jury to a particular class of witnesses.

12. APPEAL AND ERROR, § 1560*—*when refusal of instruction not prejudicial error.* The refusal to give a requested instruction that the testimony of physicians as expert witnesses should be considered by the jury with all the other evidence in the case is not prejudicial error, since the jury must have understood that they were to consider such evidence.

13. APPEAL AND ERROR, § 1525*—*when imperfect instruction will not cause reversal.* Although the instructions given in a case may not be in every respect formal and accurate, yet where such instructions taken as a whole fully and fairly present the law of case to the jury, there is not such error as will justify a reversal.

### On Rehearing.

INSTRUCTIONS, § 20*—*when instruction that jury must·not consider propriety of law upon which action based not misleading.* An instruction in a civil action for damages for injury to means of support· of children, owing to the intoxication of the father, that it is not for the jury to consider the propriety of the law in force relating to intoxicating liquors under which the action is brought, *held* not misleading.

## Nora Smiley, Appellee, v. Millard Barnes, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Massac county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed November 9, 1914. Rehearing allowed and opinion filed September 1, 1915. *Certiorari* denied by Supreme Court (making opinion final).