FOURTH DISTRICT—DECEMBER, 1915.          45

O'Rourke v. Louisville & Nashville R. Co., 197 Ill. App. 45.

## Kate O'Rourke, Administratrix, Appellee, v. Louisville & Nashville Railroad Company, Appellant.

1. NEGLIGENCE, § 103*—*when contributory negligence of intoxicated passenger not a defense.* In an action to recover for the death of plaintiff's intestate alleged to be due to the negligent act of defendant, contributory negligence is not a defense where it appears that at the time of such act intestate was in such a state of intoxication as to be unable to care for himself.

2. NEGLIGENCE, § 103*—*how question of contributory negligence of intoxicated passenger determined.* In an action to recover for the death of plaintiff's intestate as a result of the alleged negligent act of defendant, and where it appears that at the time of such act intestate was intoxicated, the question of contributory negligence is controlled by the degree of intestate's incapacity at such time due to the intoxication.

3. CARRIERS, § 289*—*how question of negligence towards intoxicated passenger determined.* In an action to recover for the death of plaintiff's intestate as a result of the alleged negligent act of defendant, where it appeared that at the time of such act intestate was intoxicated, the question of defendant's negligence would be controlled by the degree of intestate's incapacity at such time due to the intoxication.

4. CARRIERS, § 287*—*when abandoning passenger in dangerous position negligence.* It is negligence for the servants of a railroad corporation to abandon a passenger in a known place of danger where such passenger at the time of abandonment is bereft of reason and without intelligence sufficient to enable him to care for himself by reason of intoxication and is known by defendant's servant to be in that condition.

5. DEATH, § 21*—*when abandonment of passenger must be shown to be proximate cause of death.* In an action against a railroad corporation to recover for the death of plaintiff's intestate as a result of the alleged negligent act of defendant's servants in abandoning intestate while a passenger in a place of known danger, and when defendant's servants knew intestate was intoxicated and unable to care for himself, plaintiff in order to recover in the action must show that the abandonment was the proximate cause of the death sought to be recovered for.

6. NEGLIGENCE, § 47*—*how rules relating to proximate cause applied.* In actions involving negligence, the rule applicable to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

determination of questions of proximate cause is the same whether the action be to recover for death or for personal injuries.

7. NEGLIGENCE, § 48*—*what constitutes proximate cause.* The proximate cause of an event is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces the event, and without which cause the event would not have occurred.

8. NEGLIGENCE, § 49*—*when negligent person not liable for act not cause of injury.* In actions involving negligence where, after one of the causes of an event has been in operation, some independent force intervenes and produces a result not the natural effect of such first cause, or where such first cause has so far exhausted itself or has been overborne by other forces as not to be deemed the legal cause of the injury, the author of the first cause is not liable, although negligent, and although an injury would not have occurred but for the negligence.

9. NEGLIGENCE, § 49*—*when wrongdoer liable for negligent injury.* A wrongdoer is liable if the injury sought to be recovered for is one which a reasonably prudent man, by the exercise of ordinary care, might have foreseen would occur, although such wrongdoer might not have foreseen the particular accident which actually occurred, but such a wrongdoer is not liable for injuries which could not have been foreseen or expected by the exercise of ordinary care.

10. DEATH, § 21*—*when negligence of carrier in leaving passenger in known place of danger not proximate cause of death.* The negligent act of a railroad company in refusing to permit an intoxicated passenger to re-enter the train after leaving it at a station was not the proximate cause of the death of the passenger where he left the station and went to a livery stable where he was taken charge of by an officer, but subsequently was released and directed to the station of another railroad company, and was killed on the tracks of such other railroad.

Appeal from the Circuit Court of Gallatin county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the March term, 1915. Reversed with finding of facts. Opinion filed December 1, 1915.

JAMES M. HAMILL and CHARLES P. HAMILL, for appellant.

PILLOW & STONE and BARTLEY & BARTLEY, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice Higbee delivered the opinion of the court.

Appellee, the wife and administratrix of the estate of James M. O'Rourke, deceased, brought suit to recover damages for the benefit of his next of kin, for his death alleged to have been caused by the negligence of appellant. The declaration alleged that appellant's servants received appellee's intestate while he was in a drunken condition, as a passenger on its train at East St. Louis, to be transferred to Shawneetown, Illinois; that such condition was apparent and known to said servants at the time he was so received; that his state of intoxication increased after he was aboard the train and when it reached Ashley, fifty miles from East St. Louis, he had become physically and mentally incapacitated from exercising any degree of care for his own safety and that he was temporarily insane; that he was permitted to leave the train, and when he attempted to re-enter, appellant refused to allow him to do so and left him on the platform in a drunken condition at nine o'clock at night; that the place was a dangerous one, and about the hour of twelve o'clock at night, the decedent, while still in the same physical and mental condition above mentioned, was run over and crushed by one of the trains of the Illinois Central Railroad Company, without negligence or blame on the part of said railroad or any of its servants, and afterwards at four o'clock in the morning of the following day, June 27, 1913, died from the effects of said wounds; that the abandonment of the deceased, while in such helpless condition at said dangerous place, was negligence on the part of appellant and was the direct and proximate cause of his death.

A demurrer was filed to the declaration and sustained by the court. Plaintiff below abided by her declaration and judgment was entered against her for costs to be paid in due course of administration. She ap-

pealed from that judgment to this court, where the judgment of the court below was reversed and the cause remanded. The case is reported in 183 Ill. App. 593, where a more complete statement of the pleadings may be found. In the opinion filed in that case, we held that the declaration stated a cause of action and that: ''If the plaintiff was, as the declaration alleges in such a mental state of intoxication as to be incapable of caring for himself, the question of contributory negligence would not be involved in the case. The degree of incapacity from drunkenness would control the question of due care, or negligence of both plaintiff and defendant. If plaintiff was, through intoxication, so bereft of reason that he was without intelligence to care for himself, and while in that condition and known by defendant to be in that condition he was abandoned in a known place of danger where injury would be likely to result, such facts would constitute negligence.'' The case was redocketed and has been tried on the same declaration with a plea of general issue, resulting in a judgment and verdict in favor of the plaintiff below for $2,000. The railroad company has appealed, contending that the evidence does not disclose a right of recovery and that the jury were improperly instructed. To entitle appellee to recover in this case, it was necessary for her to prove, (1) that deceased was so incapacitated by intoxication as to be incapable of caring for his own safety; (2) that while in such condition he was left or abandoned by appellant in a dangerous place; (3) that such abandonment was the proximate cause of his death. To these conditions appellant seeks to add a fourth, that is, that due care on the part of deceased must be proven, but this, as we have above seen, is not necessary, if appellee was incapacitated to take care of himself as charged in the declaration.

The proofs show that on June 26, 1910, appellant ran an excursion train from Shawneetown to East St. Louis

and return; that deceased, with several companions, purchased tickets at Shawneetown and went on the excursion train; that he had been drinking before he started, but acted properly on the trip to East St. Louis, where he, with others, seems to have put in the day drinking and carousing. The excursion train, as further shown by the proofs, started on its return trip at 6:25 that evening and for an hour before its departure deceased drank very heavily. He entered the train in a drunken condition, and when in the vicinity of Belleville became boisterous and ungovernable, passing through the car swearing and using obscene language, drinking out of a bottle, insisting on others drinking and insulting passengers, going so far as to pull the nose of one and put his feet up on the back of a seat occupied by a young woman, and he finally became engaged in a fight. The conductor and brakeman remonstrated with him a number of times, when he would temporarily cease his drunken acts, but would begin again as soon as the train men left. When the train reached Ashley, some fifty miles from East St. Louis at about 8:30 p. m., deceased ran through the car and jumped off, alighting backwards and partially falling. As he did so a bottle of whisky fell from his pocket, which the conductor kicked into the weeds. The conductor then offered to assist deceased, but he refused the proffered aid and cursed him. As the train started, deceased wanted to get back upon it but the conductor denied him permission to do so and the train went on leaving him standing on the platform. After the departure of the train, deceased asked appellant's night operator where the livery stable was, saying he wanted to get his horse and buggy. The operator directed him to a stable about a block away and deceased started to it, going south down the platform, across the tracks of the Illinois Central Railroad, which crosses appellant's track nearly at right angles, a short distance east of the depot of the latter,

thence on across the street and turning south proceed-
ed to the stable which was located about the middle of
the block. A horse hitched to a buggy was tied in the
stable and O'Rourke immediately climbed into the
buggy and attempted to drive away. The livery man
told him to get out of the buggy and he complied with
this request and started down the street. The night
marshal, who had been informed there was a drunken
man at the livery stable, had started to that place and
when close to it found deceased leaning against a wire
fence. The marshal testified the man appeared to be
able to take care of himself, so he directed him to go
over to the Illinois Central depot, which he did. When
he reached the station he stood around mumbling to
himself and attracted some attention by reason of his
intoxication. Nothing is known of O'Rourke or what
he did, so far as the proof shows, from a short time
after his arrival at the Illinois Central Station until
about 11:30 p. m. when his body was found along the
Illinois Central tracks, about 1,000 feet south of the
place where they crossed appellant's track, with one
arm and one leg cut off. He never regained conscious-
ness and died about 4 o'clock the next morning. How
he met his death was not shown, but one of the wit-
nesses was permitted to testify that in his opinion de-
ceased was attempting to board a southbound Illinois
Central freight train that passed a short time before
he was discovered and fell between the moving cars.

At Ashley, appellant's track runs nearly east and
west and crosses the Illinois Central railroad's double
tracks at right angles. The tracks of the latter were
south of appellant's station and platform, and east of
these double tracks was what was known as Railroad
street. The livery stable appears to have been in the
middle of the block south of appellant's track and on
the east of Railroad street, it being about 350 feet
from the place where deceased got off the train to the
livery stable. The Illinois Central depot was on the

east side of its tracks a short distance south of the crossing of the two roads and it was not necessary for deceased in going from the livery stable to that station to cross the tracks of either road. Whether deceased was so incapacitated by intoxication as to be incapable of caring for his own safety and whether, while in that condition, he was left or abandoned by appellant in a dangerous place, are questions which we do not propose to discuss in this opinion, but assuming that these conditions were as claimed by appellee, yet before she is entitled to a recovery in this case it must appear that such abandonment was the proximate cause of the death of her intestate.

In determining what is the proximate cause of an injury or death in cases of this kind, we do not find the rule or reasoning different from that in other cases where negligence is alleged to be the proximate cause of the injury received. "The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produced that event, and without which that event would not have occurred." *Wabash R. Co. v. Coker,* 81 Ill. App. 660. But if, after the cause in question has been in operation, some independent force comes in and produces an injury not its natural or probable effect, or the cause in question has so far exhausted itself and become overborne by other forces as not to be deemed the legal cause of the injury, the author of the cause is not responsible. Bishop on Non-Contract Law, secs. 42 and 44. And this is so although the injury would never have occurred if the act of negligence complained of had not been committed. For instance, in *Wabash R. Co. v. Coker, supra,* the appellant stopped its cars across a public street in excess of ten minutes. Appellee and her husband in a wagon were compelled to stop, another party drove up and was compelled to stop, the noise caused by the coupling of an engine to the cars

frightened the horse of the last party and his buggy struck appellee's wagon, injuring her. The court held that the railroad was not liable, although the accident would not have occurred in the absence of the railroad's negligence in blocking the street. The wrongdoer is to be held liable if the injury was such a one as a reasonably prudent man might, by the exercise of ordinary care, have foreseen would occur, although he might not have foreseen the particular accident that did occur, but he is not responsible for injuries which could not have been foreseen or expected. *Pullman Palace Car Co. v. Laack*, 143 Ill. 242.

In *Keeshan v. Elgin A. & S. Traction Co.*, 229 Ill. 533, suit was brought against the railroad company by the administratrix of Edward J. Keeshan, and a declaration filed, charging that Keeshan was a passenger on appellant's car bound for the City of Elgin; that when he entered the car he was very much intoxicated and unable to care for himself, which was known to defendant's servant in charge of the car; that before the arrival of the car at Elgin, the defendant, by his said servant, forcibly and violently expelled said Keeshan from said car, and refused to permit him to re-enter the same; that it was nighttime, the weather was cold, the snow was falling and wind blowing very hard; that there was no shelter at said station or immediate neighborhood; that the home of Keeshan was at Elgin, five miles away; that he was still very much intoxicated and unable to care for himself; that he started to walk from said station to his home and in endeavoring to cross a bridge on Fox River, on the line of said railroad, on his way home and while using due care and caution for his own safety, he fell off or walked off such bridge into the river and his death resulted. The court sustained a demurrer to this declaration, and the plaintiff, having elected to stand by the same, judgment was entered against her for cost. The Appellate Court for the Second District affirmed the judgment of

the trial court [132 Ill. App. 416] and the Supreme Court affirmed the judgment of the Appellate Court. The Supreme Court in the course of its opinion in that case says: "If putting Keeshan off at the time and place alleged was a wrongful act on account of the condition of the weather, the declaration shows no natural connection between that act and the consequences which resulted from his attempting to walk to his home, in his intoxicated condition, across defendant's bridge. If it was not necessary to a liability of the defendant that its servant in charge of the car should be able to anticipate the particular injury which might result from a wrongful act, still the defendant cannot be held liable for failing to provide against a possible injury which could not have been reasonably anticipated. If Keeshan was expelled and left in a place where he was exposed to unnecessary peril in his drunken condition, on account of the cold and storm, there is no connection between that act and his walking or falling off the bridge."

In this case O'Rourke was not injured at the place where appellant refused to permit him to re-enter the train, but, if that place was a place of danger, he had gotten beyond and outside of it and had gone to the livery stable where there was no danger from the trains of either railroad, and immediately after he left the livery stable, when he was found by the night marshal, he was also in a place of safety. He was in fact at that time taken charge of by the officer to the extent that the officer, not considering him sufficiently intoxicated to be taken into custody, directed him to go to the Illinois Central station. Had deceased been struck by appellant's train at the place where he was abandoned, or if while leaving that place and crossing over the Illinois Central tracks to a place of safety, he had been struck by a train on one of the latter tracks, the situation would have been different and might more readily appear to have been a natural consequence re-

54 APPELLATE COURTS OF ILLINOIS.

O'Rourke v. Louisville & Nashville R. Co., 197 Ill. App. 45.

sulting from his ejection from the train or the refusal of appellant to allow him to re-enter. But he had entered a zone of safety, and it does not appear that he contemplated returning to dangerous proximity of the tracks of either of said railroads, and he in fact, so far as the proof shows, never did go into immediate proximity to appellant's road, after he left its station. The reason why he went near to the Illinois Central Railroad tracks was because he was directed to do so by the marshal who sent him to the Illinois Central Railroad station. His death occurred more than 1,000 feet from where appellant left him, and resulted not from having been left by appellant, in a place of danger, but because after having reached a place of safety he afterwards went into a new place of danger or attempted a dangerous act at considerable distance from appellant's station.

We do not think it can properly be said that a reasonably prudent man could have foreseen that O'Rourke, when put off the train would, after having gone of his own motion from appellant's station to a place of safety, been directed by an officer to go to the station of another railroad, and hours afterwards been injured along the tracks of the second railroad 1,000 feet away from the place where appellant left him. It does not appear to us that there was a direct, casual relation between the act of appellant and the injury received by appellee's intestate. The judgment of the trial court will therefore be reversed.

*Judgment reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. The court finds as a fact, from the record in this case, that the negligence of appellant charged and sought to be proven by appellee was not the proximate cause of the death of appellee's intestate.