Joseph Posch, by James S. Deming, Appellee, v. Chicago Railways Company et al., Appellants.

Gen. No. 25,674.

1. STREET RAILROADS—*necessity for exercise of care by boy riding on rear of wagon.* While the negligence of the driver of a delivery wagon could not be imputed to plaintiff, a boy who was riding on the rear of the wagon with the knowledge of the driver and who was injured when defendants' street car struck the wagon, yet he could not recover unless it was shown that he was in the exercise of ordinary care for his own safety.

2. STREET RAILROADS—*when contributory negligence of boy in failing to jump from wagon on approach of car question for jury.* Whether plaintiff, who was riding on the rear of a delivery wagon, was in the exercise of ordinary care for his own safety in remaining on the wagon instead of jumping when he saw a street car near and approaching rapidly, *held* a question for the jury.

3. INSTRUCTIONS—*when jury not authorized to go outside evidence.* An instruction in a negligence case that the jury should determine the weight of evidence from all the evidence "together with all the other facts and circumstances appearing upon the trial" will not require interference with the judgment on the objection that it authorized the jury to consider matters outside of the evidence, especially where the jury were told in numerous other instructions that they must base their finding on the evidence.

4. APPEAL AND ERROR—*when use of "should" instead of "may" in instruction harmless.* Where no proper elements were omitted in instructing the jury what to consider and they were left free to consider all the evidence in the case, appellants were not prejudiced by the use of "should" instead of "may" in instructing the jury as to the elements to be considered by them.

5. STREET RAILROADS—*when instruction on care of plaintiff not unduly limited as to time.* In an action for injuries to plaintiff received when defendants' street car collided with a delivery wagon upon which plaintiff was riding with the knowledge of the driver, an instruction that plaintiff must have been in the exercise of ordinary care for his own safety "before and at the time of the accident," was not objectionable as limiting the time within which plaintiff must have been in the exercise of ordinary care to the time of the accident and immediately before it.

6. STREET RAILROADS—*when instruction on contributory negligence in intrusting safety to others properly refused.* In an action

for injuries received by plaintiff when defendants' street car collided with a delivery wagon upon which he was riding with the knowledge of those in charge thereof, it was not error to refuse an instruction to find for defendant if the jury found that plaintiff "intrusted his own care and safety solely and entirely" to the boys in charge of the wagon, and if they believed that constituted want of reasonable diligence, where the evidence did not warrant a finding that he intrusted his safety solely to the two boys.

7. NEGLIGENCE—*when instruction on imputed negligence proper.* In an action for injuries to plaintiff by collision of defendants' street car with a delivery wagon upon which plaintiff was riding with the knowledge of the driver, it was proper to instruct the jury that if the driver was negligent in driving the horse his negligence could not be imputed to plaintiff.

8. DAMAGES—*when not excessive.* In an action for personal injuries to a boy 11 years of age, consisting principally of a fracture of the neck of the left femur, resulting in great pain for a considerable time and a permanent shortening of the leg, and also a permanent injury to one eye, a verdict for $5,500 was not so excessive as to require interference by the Appellate Court.

9. DAMAGES—*how determined for personal injuries.* The amount of damages for personal injuries depends upon the circumstances of the case and is not a matter of mathematical computation.

10. DAMAGES—*consideration of depreciation in purchasing power of money in determining.* In considering whether the damages awarded for personal injuries are excessive, the court cannot be unmindful of the fact that the money value of life and health is appreciating and the purchasing power of money depreciating in recent years.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed June 18, 1921.

CHARLES LEROY BROWN, for appellants; JOHN R. GUILLIAMS and FRANKLIN B. HUSSEY, of counsel.

ARTHUR A. HOUSE and CHARLES C. SPENCER, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendants to recover

Posch v. Chicago Railways Co., 221 Ill. App. 241.

damages for personal injuries. There was a verdict and judgment in his favor for $5,500, to reverse which defendants prosecute this appeal.

Between 7:30 and 8:00 o'clock on the evening of September 1, 1917, plaintiff, a boy 11 years old, was riding in the rear end of a grocer's delivery wagon which was being driven east in Oakdale avenue, and as the wagon was crossing the west or southbound street car track in Sheffield avenue one of defendants' cars coming from the north in Sheffield avenue struck the rear end of the wagon. The wagon was pushed or thrown to the southeast and came in contact with the curb or a telegraph pole at that corner. Plaintiff was thrown from the wagon and injured.

Defendants argue three reasons why the judgment should be reversed: (1) That the court erred in overruling their motion for a directed verdict; (2) erroneous rulings on instructions; and (3) that the damages are grossly excessive.

Sheffield avenue is a north and south street in the City of Chicago and is intersected at right angles by Oakdale avenue. Defendants operated a double line of street cars in Sheffield avenue. On the afternoon and evening in question, Howard Bauernfeind, 17 years old, was employed by a grocer to deliver goods, and for this purpose was provided with a one-horse wagon. Gustav Fuessle, 16 years old, who was to succeed Bauernfeind, was assisting in delivering the groceries and familiarizing himself with the route. Plaintiff had been riding in the wagon for a considerable period of time before the accident and his presence on the wagon was known to the other two boys. Just before the accident, Bauernfeind was driving the horse at about 6 or 7 miles per hour east in Oakdale avenue, and just before he reached Sheffield he slowed the horse down to a walk. There was a building at the northwest corner of the two streets and when Bauernfeind had gotten far enough east so that he could look

north in Sheffield avenue he saw the street car in question coming south. The car at that time was about 150 feet north of Oakdale avenue. There was a man and woman standing out in Sheffield avenue about 25 feet north of Oakdale avenue signaling the car to stop. Bauernfeind thought the car was going to take on the two and drove the horse forward at a faster gait. The car had no passengers and was proceeding to the barn as the street car men had completed the day's work. It did not stop and before the wagon had cleared the track the car struck the tail gate or rear end of the wagon. The horse leaped forward and the wagon was pushed or slued around to the southeast and came in contact with the curb or telegraph pole at the southeast corner. Plaintiff was thrown off the wagon. The horse ran east about one-half a block when the driver succeeded in stopping him. Fuessle also was thrown or fell from the wagon. The three boys that were on the wagon and the man and woman who signaled the car to stop testified for the plaintiff. Their testimony tended to show that the car did not slacken its speed and that it was going at the rate of 15 to 25 miles per hour. For the defendant the motorman and conductor of the car testified, in substance, that the car was traveling at about 10 miles per hour and that as it approached the man and woman in the street the speed was reduced to about 6 miles per hour. The motorman further testified that when the car was about 100 feet north of the man and woman in the street, the man put up his hand signaling the car to stop; that the witness thereupon shut off the power and that when he was about 10 feet from them the man pointed south and they both turned and walked to the west curb indicating that the car in question was not the one they wished to take; that thereupon the witness applied the power and increased the speed of the car. The witness further testified that he saw the driver of the horse slacken

up and come almost to a stop west of the tracks; that suddenly the driver speeded up the horse and crossed the track in front of the car; that immediately the power was shut off and the brakes applied but it was too late to avoid the collision; that the car pushed the wagon around and was brought to a stop and the front end of it when stopped was at about the south side of Oakdale avenue; that the wagon struck the curb and plaintiff, who was sitting on the tail gate, fell off. Witnesses for the plaintiff testified that when the street car stopped it was south of Oakdale avenue, while witnesses for defendants, including a city policeman, testified that the car was stopped in Oakdale avenue.

1. As we understand it, defendants' position is that the court should have directed a verdict in their favor for the reason that the accident was the result of the reckless driving of the grocery boy; that they were in no way negligent and that plaintiff did nothing by way of warning the driver and made no attempt to get off the wagon so as to save himself from injury and that these conclusions appear from the undisputed evidence. Upon a consideration of the evidence we think it clear that we would not be warranted in holding that the collision was brought about by the negligent driving of the grocery boy and that the street car men were without fault. While the negligence of the driver could not be imputed to plaintiff, yet he could not recover unless it was shown that he was in the exercise of ordinary care for his own safety. *Opp v. Pryor*, 294 Ill. 538; *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246. But we think that the question whether plaintiff was in the exercise of ordinary care for his own safety was a question to be determined by the jury. He testified that he was standing in the rear end of the wagon holding onto a side post which helped to support the wagon top; that when the wagon was near the west side of Sheffield avenue he saw the street

car about 150 feet north of Oakdale avenue; that "I didn't jump off because I didn't have a chance, it was too close. I didn't jump west right over the tail gate of the wagon because the car was coming this way and we were just going over the track. If I had jumped off it would have hit me. I would have got it worse." We think the question whether plaintiff was in the exercise of ordinary care for his own safety was a proper one for the jury. He knew the driver saw the car and the two persons standing in the street signaling the car to stop. No attempt is made by defendants to point out anything plaintiff should have done in warning the driver or in making any suggestions to him, nor do we think we would be justified in saying that plaintiff could not recover because he did not jump off the wagon. We think the court did not err in refusing to direct a verdict.

2. At the request of plaintiff the court gave the following instruction: "7. In determining upon which side the preponderance of evidence is, the jury should take into consideration the number of witnesses testifying, the opportunities of the several witnesses for seeing, or knowing the things about which they testify; their conduct and demeanor while testifying; their interest or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements; and from all of the evidence together with all the other facts and circumstances appearing upon the trial, determine upon which side is the greater weight or preponderance of the evidence." It is argued that this instruction is wrong for two reasons: (a) It authorizes the jury to determine where the preponderance is on a consideration of matters outside the evidence and (b), it told the jury what they *"should"* consider instead of what they *"might"* consider. (a) It is strenuously insisted that the instruction is reversibly erroneous in telling the jury that they should take into consideration

"other facts and circumstances appearing upon the trial." In support of this the cases of *Purdy v. People*, 140 Ill. 46; *People v. McGinnis*, 234 Ill. 68; *People v. Fox*, 269 Ill. 300, and *Balenovic v. Anasick*, 181 Ill. App. 660, and other cases are cited. In the *Purdy* case the court told the jury that in determining the degree of credibility to be accorded to the testimony of the defendant in a criminal case they might consider his demeanor and conduct on the witness stand and "during the trial." In the *McGinnis* case the instruction said: "The jury might take into consideration the demeanor and conduct of the defendant during the trial" in passing upon his credibility, and in the *Fox* case the instruction was: "From all the surrounding circumstances appearing on the trial which witnesses are more worthy of credit and to give credit accordingly." The instructions in these cases were held erroneous because they did not limit the jury to a consideration of the facts and circumstances appearing in evidence but permitted them to consider all the facts and circumstances appearing on the trial. In the *Balenovic* case the instruction complained of told the jury that from all the "facts shown by the evidence and from all other facts and circumstances" the jury must decide on which side is the preponderance. This instruction was held bad because it did not confine the jury to the facts and circumstances in evidence. Instructions containing language similar to that complained of, while inaccurate, have been held not to be reversibly erroneous in the cases of *Hopp v. Chicago City Ry. Co.*, 170 Ill. App. 72, and *Tindall v. Chicago & N. W. Ry. Co.*, 200 Ill. App. 556, and cases there cited. In the *Hopp* case the instruction enumerated certain elements the jury might consider in determining the credibility of witnesses and that they might also consider "all the other surrounding circumstances appearing on the trial." The court there said (p. 73): "A verdict is not directed by this instruction, and in-

structions in substantially the same words have been time and again approved by the courts of this State. *Chenoweth v. Burr*, 242 Ill. 312, and cases there cited, and in *North Chicago St. Ry. Co. v. Wellner*, 206 Ill. 272, the identical instruction here complained of was approved.'' In discussing this same instruction the court, in the *Tindall* case, said: ''The jury were allowed by it (the instruction) to consider all 'the surrounding circumstances appearing on the trial.' This instruction was criticised by us as of doubtful propriety in *Ames v. Thren*, 136 Ill. App. 568. It is taken word for word from *North Chicago St. Ry. Co. v. Wellner*, 206 Ill. 272, and the instruction is there approved, though these words here complained of were not there discussed. The instruction has been approved by the Appellate Court, First District, in *Hopp v. Chicago City Ry. Co.*, 170 Ill. App. 72.'' Under these authorities we think we would not be justified in disturbing the judgment on the objection made. Moreover, the jury were told in numerous other instructions that they must base their finding on the evidence. We think the defendants were not in any way prejudiced by the giving of this instruction.

(b) The second complaint urged against this instruction is that it told the jury what they *''should''* consider instead of telling them what they *''might''* consider in determining where the preponderance lay. Some cases have criticised the use of the word ''should'' in instructions which enumerated certain elements for the jury to consider in determining the credibility of witnesses or the question of the preponderance of evidence, while other cases have approved instructions where the word ''should'' was used. We know of no case where the judgment was reversed solely on the ground of the use of the word ''should'' in such an instruction, and we think none can be found. In *Meyer v. Mead*, 83 Ill. 19, the instruction complained of and under consideration by the court told the jury

that the preponderance of evidence was not alone determined by the number of witnesses testifying. It further told them that in determining that question the jury *"must"* also take into consideration other things which were there enumerated. The opinion was by Mr. Justice Scholfield and it was held that the instruction was unobjectionable. The court there said (p. 21): "It informs the jury that a preponderance of evidence is not to be determined alone by the number of witnesses, but that they should also take into consideration well recognized factors in the determination of its weight. We see no objection to this, and think it improbable the instruction could have misled the jury to appellant's prejudice." In *Chicago Union Traction Co. v. Yarus*, 221 Ill. 641, the court expressly approved the use of the word "should" in a similar instruction. The court, after quoting the instruction, there said (p. 643): "It is urged that the effect of the word 'should' in said instruction was to peremptorily instruct the jury that it should consider only the elements there outlined in determining the question of the preponderance of the evidence, and to exclude from its consideration the element of the number of witnesses, and that it should have been stated in a permissive, rather than in a peremptory, manner. In the case of *Meyer v. Mead*, 83 Ill. 19, the word 'must' was used where 'should' appears in the instruction under discussion, and the giving of said instruction was approved by this court. And in *Illinois Steel Co. v. Ryska*, 102 Ill. App. 347, the point here presented was made on an instruction identical with the one here under consideration, and the court held the objection was not well taken, and this court affirmed such judgment. (*Illinois Steel Co. v. Ryska*, 200 Ill. 280.) It was not error to give said instruction." To the same effect is *Deering v. Barzak*, 227 Ill. 71. It was there objected that a similar instruction invaded the province of the jury in that it directed

them how to determine where the preponderance lay and did not allow the jury in their own way and manner to determine on which side was the preponderance. In holding the objection untenable, the court said (p. 78): "We do not regard the instruction as an invasion of the province of the jury. The instruction very properly directs the attention of the jury to a number of elements that should be taken into consideration in determining where the preponderance of the evidence is. This court has often approved instructions of this character," citing a number of cases. In *Chicago Union Traction Co. v. Hampe*, 228 Ill. 346, an instruction told the jury that in determining the question of the preponderance of the evidence "the jury should take into consideration" certain enumerated matters proper to be considered by them, omitting, however, any reference to the number of witnesses testifying pro and con, and concluded, "and from all these circumstances determine upon which side is the weight or preponderance of the evidence." The court there said (p. 350): "It omitted one very important consideration, and for that reason should have been refused. It is doubtful whether an instruction of this character should, in any case, limit the jury to the consideration of matters particularly and specifically mentioned and pointed out in the instruction. It is proper to enumerate elements which they may consider, but they should always be left free to consider all the evidence introduced and all the facts and circumstances shown upon the trial, in determining the crucial question as to where lies the greater weight of the proof." It will be seen that in that case the instruction was held bad because it omitted the element of the number of witnesses and only authorized the jury to consider the elements mentioned, while it should have told them that they should consider the elements mentioned and all other facts and circumstances in evidence. In *Lyons v. Chicago City Ry. Co.*,

258 Ill. 75, in discussing a similar instruction, the court said (p. 84) : "While it may be proper to enumerate elements which the jury may consider, and instruction which tells them they 'must' or 'should' consider is liable to be misleading. (*Chicago Union Traction Co. v. Hampe,* 228 Ill. 346.)" To the same effect is *People v. Schultz,* 260 Ill. 35. We are unable to see how the jury could have been misled by the use of the word "should" instead of the word "may" in the instruction. No proper elements were omitted and the jury were left free to consider all of the evidence in the case. The weight to be given to the elements enumerated and to all of the evidence was left solely to the jury. We think the defendants were not prejudiced by the use of the word "should."

Complaint is also made to the giving of an instruction at the request of plaintiff defining the phrase "proximate cause." We think it would serve no useful purpose to discuss the authorities cited by defendants. It is sufficient to say that the same definition of proximate cause was given in the case of *Wabash R. Co. v. Coker,* 81 Ill. App. 660, as in the instruction under consideration. This case was affirmed in 183 Ill. 223. To the same effect are the cases of *Smiley v. Barnes,* 196 Ill. App. 530, and *O'Rourke v. Louisville & N. R. Co.,* 197 Ill. App. 45.

Objection is made to the giving of instructions 10, 12 and 15, and to the refusal of defendants' instruction 3. The complaint urged against instructions 10, 12 and 15, is that they told the jury that plaintiff must have been in the exercise of ordinary care for his own safety "before and at the time of the accident." Defendants' position, as stated by their counsel, is: "The objection we make is not one of time or tense. The objection is that the instruction assumes that an ordinarily prudent person would not have permitted himself to be in the situation plaintiff was in, not only at the time of the injury *but before* the time

of the injury." It is argued that the evidence shows "plaintiff was negligent for a long time before"; that he was on the wagon a long time before the accident and that it was just as negligent for plaintiff to be on the wagon before the injury as at the time of the injury. We think the instructions are not subject to the criticism made. From the instructions the time within which plaintiff must have been in the exercise of ordinary care for his own safety was not limited to the time of the accident nor immediately before it, and we have heretofore held in the case of *Krausz v. Chicago City Ry. Co.*, 218 Ill. App. 650 (abst.), that in an almost similar situation it was "not negligence *per se* for a boy of 14 to ride on a wagon, nor is it, necessarily, for him to ride on the rear of a wagon with his legs, from the knees down, dangling over the tail piece." We have considered the other objection urged against instruction 12 and think it untenable. Nor do we think the refusal to give defendants' instruction 3 prejudiced defendants.

Defendants next contend that the court erred in refusing to give instruction 1 tendered by them. By that instruction it was sought to tell the jury, in substance, that if plaintiff was riding on the wagon against the wishes of the driver and the other boy in charge of the wagon, and if the jury believed from the evidence that plaintiff "intrusted his own care and safety solely and entirely" to the boys in charge of the wagon, and if the jury believed that this constituted a failure on the part of plaintiff to exercise reasonable diligence, then the verdict should be for defendants. This instruction was properly refused as we think the evidence did not warrant the conclusion that plaintiff intrusted his safety solely to the other two boys. Other instructions told the jury that plaintiff was required to use his faculties and exercise ordinary care for his own safety to avoid being injured or he could not recover. Upon a consideration of all the

instructions we think it clear that the jury were informed that plaintiff could not recover unless he used his faculties as an ordinary boy of his age, capacity and experience would to avoid being injured.

Defendants further contend that it was reversibly erroneous for the court to give plaintiff's instruction 11, which told the jury that even if they believed from the evidence that the driver of the wagon was guilty of carelessness in driving the horse, that such negligence could not be imputed or charged against the plaintiff. We think this was a correct statement of the law. *Nonn v. Chicago City Ry. Co.*, 232 Ill. 378; *Pienta v. Chicago City Ry. Co.*, *supra*, and *Opp v. Pryor*, *supra*. Complaint is made to the giving of plaintiff's instruction 18 on the question of damages, on the ground that it permitted the jury to assess damages on account of loss of earning power during his minority. We think the instruction is not subject to the criticism made. *Chicago Terminal Transfer R. Co. v. Gruss*, 200 Ill. 195.

It is finally argued that the damages are excessive. The evidence discloses that when the street car struck the wagon plaintiff was thrown or fell from the wagon; that he was rendered unconscious and taken to the hospital; that upon examination it was found that he had sustained a fracture of the neck of the left femur and a wound over the left eye; that he was confined to the hospital for 6 weeks, during the first 4 weeks of which he suffered great pain; that upon leaving the hospital he was taken home where he was confined to his bed for a few weeks; that he wore an iron brace on the left leg or hip for about 6 months during which time he was obliged to walk with the aid of two crutches; that at the time of the trial, which was a year and one-half after the accident, the evidence tends to show, if he ran or walked any considerable distance, his hip hurt and he would be compelled to sit down for a while. The evidence further tends to

show that at the time of the trial there was a bony
union over about three-fourths of the extent of the
fracture and no such union of the remaining one-
fourth; that prior to the injury the normal angle of
the neck of the femur was about 117 degrees and that
on account of the fracture this angle was reduced to
about 90 degrees; that this shortened the leg. There
is considerable doubt as to whether the leg was short-
ened one-half inch or one and one-half inches. Dr.
Adams testified for the plaintiff that the shortening
was one and one-half inches and that this was shown
by tape measurements he made as well as by the X-ray
picture introduced in evidence. Dr. Cox, also for the
plaintiff, testified that the X-ray showed a shortening
of one and one-half inches and that a measurement
made by himself and Dr. Leeming, for the defendants,
showed the shortening to be but one-half inch. Dr.
Leeming testified that the X-ray showed a shortening
of one and one-quarter inches and that the measure-
ments made by himself and Dr. Cox during the prog-
ress of the trial showed the shortening to be one-
half inch. During the trial plaintiff, before the jury,
stood with his left foot upon a telephone directory
one and one-half inches thick and, when in that posi-
tion, his shoulders were level. This demonstration
tended to show that the shortening was one and one-
half inches. In these circumstances we think the ques-
tion of the extent of the shortening was one for the
jury to determine. The evidence also tends to show
that there was a drooping of the left eyelid and that
the eyesight was somewhat impaired. The amount of
damages in cases of this character depends upon the
circumstances of the case and is not a matter of
mathematical computation. The damages awarded by
the jury may be larger than would have been sustained
a few years ago, and on the question of the amount
the earlier decisions of this State are of little assist-
ance. We cannot, however, be unmindful of the fact

that the money value of life and health is appreciating and the purchasing power of money depreciating during recent years. Without deciding whether the amount is larger than we would have awarded had the responsibility been ours, we think it is not so excessive as to require interference on our part. *De Fillippi v. Spring Valley Coal Co.,* 202 Ill. App. 61; *Delohery v. Quinlan,* 210 Ill. App. 321; *Girdzus v. Van Etten,* 211 Ill. App. 533.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J., and THOMSON, J., concur.