## Robert Cohen, by Katherine Cohen, his Next Friend, Defendant in Error, v. Charles E. Fayette, Plaintiff in Error.

### Gen. No. 28,649.

1. MASTER AND SERVANT—*sufficiency of evidence of existence of relation in negligence action.* Where the testimony, in an action against an employer for damages for personal injuries received when a truck owned by defendant and driven by his employee struck plaintiff, showed that after returning to defendant's garage from his day's deliveries the driver took the truck and drove to his home, where he had dinner, and was on his way back to the garage when the accident occurred, no jury would be justified in finding that defendant impliedly authorized the driver to use the car as it was being used at the time of the accident or impliedly consented to such use.

2. MASTER AND SERVANT—*burden of proof of defendant's liability for negligence of servant.* Where an employer is sought to be held liable for the consequences of the negligence of his employee and denies that the relation of master and servant existed at the time of the accident, the plaintiff must show, by a preponderance of the evidence not only that the person at fault was an employee of defendant but that the injury was inflicted while the servant was engaged in the master's business and was acting within the scope of his employment.

3. MASTER AND SERVANT—*when master not responsible for servant's negligent driving of motor truck.* If a servant takes a vehicle of his employer for a purpose wholly disconnected from the work which he is hired to do the relation of master and servant is suspended during the whole of the journey and if a third party sustains an injury through the servant's negligence while the servant is returning the vehicle to the place from which he took it the master is not liable.

Error by defendant to the Circuit Court of Cook county; the Hon. F. S. WILSON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1923. Reversed and remanded. Opinion filed July 9, 1924. *Certiorari* denied by Supreme Court (making opinion final).

BURT A. CROWE, for plaintiff in error; ROY A. NUTT, of counsel.

Cohen v. Fayette, 233 Ill. App. 458.

PRATT & ZEISS, for defendant in error; A. ARTHUR YORT, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

This writ of error is brought to reverse a judgment for damages for personal injuries alleged to have been sustained by the plaintiff when he was struck by an automobile delivery truck belonging to defendant. The three counts of the declaration on which the case was tried charge that the accident happened through the negligence of defendant's servant in charge of the automobile. With his plea of not guilty, the defendant filed special pleas alleging that at the time of the accident the man in charge of the automobile was not engaged in defendant's business, but was engaged on business of his own, outside of the scope of any authority given him by the defendant.

No question of negligence is discussed in the brief of defendant's counsel. For the purposes of this writ of error, it is apparently admitted—or at least, not denied—that the automobile in question belonged to the defendant and at the time of the accident was being driven by an employee of defendant, that such driver was negligent as charged in the declaration, and that such negligence was the proximate cause of the accident and injury to the plaintiff. The main contention of defendant's counsel is that the evidence does not show, by the necessary preponderance, that the acts of negligence complained of occurred while such driver was acting in the course and within the scope of his employment, but does show affirmatively that, at the time of the accident, the driver was engaged in pursuing purposes of his own outside of the scope of his employment, and therefore the defendant cannot be held liable on the theory of *respondeat superior.*

The defendant was engaged in selling candies on commission. He had no place of business other than his residence on Leland Avenue, Chicago. He owned

a half-ton automobile delivery truck which he kept in a garage on Clark Street near Leland Avenue. The truck was used to make deliveries to customers of the candies he sold, and defendant employed a young man named Auer to drive it. The driver's hours of work were from eight o'clock in the morning until six in the evening. The accident happened on May 28, 1920, at half past seven o'clock in the evening. Auer, who lived on Ridge Avenue near Victoria Street, was driving defendant's empty truck west on Victoria Street and was approaching Clark Street, at a rate of speed variously estimated by the witnesses at from 15 to 40 miles an hour, when the plaintiff, a boy 10 years old, who had been playing on the sidewalk, ran into the street in front of the automobile and was injured. The defendant was not in the car at the time and had no personal knowledge of the facts regarding the accident.

An investigator, called by the plaintiff, testified that about 3 weeks after the accident he interviewed the defendant; that defendant then admitted that he owned the car, and that his employee, Auer, was driving it; that defendant also said that Auer "had been out on the north side some place" delivering a load of merchandise and that "on his way back to the garage in the car he stopped at his home, as he did sometimes, sometimes changed his clothes, sometimes to get something to eat;" that "Victoria street was the shortest way to the garage" from Auer's home on Ridge Avenue, and that Auer "frequently came up that way to go to the garage." These alleged verbal admissions of the defendant constitute the only evidence offered by the plaintiff on the issue raised by the special pleas.

The defendant testified that when he hired Auer some two years before the accident, he told Auer that "he was not allowed to use the truck after six o'clock in the evening for any purpose whatever," and that during such two years Auer was always back in the

garage at six o'clock at night, with one exception, and that was in December; that "his work was laid out so that he would be back in the garage at six o'clock every night"; that he, the defendant, had never given Auer permission to take the truck to his home, "to change his clothes, or to get meals, or anything of that sort"; and that Auer's route was "up north into the suburbs" from Evanston to Fort Sheridan. This testimony of the defendant was fully corroborated by Auer, who testified further that on the day of the accident he had been making deliveries "somewhere in the suburbs" and had "got back to the north side near Mr. Fayette's place of business, or where he kept his car," at five o'clock; that he then found he had no further work to do that day for the defendant, whereupon, instead of putting the car in the garage, he drove the car to his home "to eat"; that he did this without the permission and contrary to the general instructions of the defendant; that he remained at home over an hour and then, "around seven o'clock," he started back to the garage, going "up Ridge avenue to Victoria, and Victoria to Clark, where the accident occurred."

Upon the question of fact involved in defendant's contention, plaintiff's counsel argue that the testimony of plaintiff's investigator shows that defendant knew that Auer was in the habit of stopping at his home on his way back from the north shore suburbs "to eat his dinner or to change his clothes, and then take the car on to the garage after dinner," and that, therefore, defendant impliedly consented to such use of the car by Auer. There is no testimony in the record, other than that of the investigator above stated, that Auer had any such habit or custom, and while the record does not show that defendant specifically denied that he told the investigator that Auer sometimes stopped at his house for dinner or to change his clothing, it does show that defendant testified that, in fact, he never allowed or permitted Auer

to do so, and that during the whole time of Auer's employment, Auer had never been out with the truck after six o'clock but once, and that was not the time of the accident. Furthermore, no witness disputes the testimony of Auer that on the day in question he did not stop "on his way home" to get his dinner, but that after he had finished making his deliveries for that day, he returned to defendant's place of business (which was near the garage) more than 2 hours before the accident happened, and then, instead of putting up the car, he took it, without permission and contrary to defendant's instructions, to his home for his evening meal, and after eating his dinner, he "was on his way back to the garage"—not from his work, but from his home—when the accident occurred. We think no jury would be justified in finding from this evidence that defendant impliedly authorized Auer to use the car as it was being used at the time of the accident, or impliedly consented to such use. (*Steffen v. McNaughton,* 142 Wis. 49; *Lotz v. Hanlon,* 217 Pa. 339.)

Upon the question of law involved in defendant's contention, the rule is well settled that where an employer is sought to be held liable for the consequences of the negligence of his employee, and the employer denies that the relation of master and servant existed at the time of the accident, the plaintiff must show by a preponderance of the evidence not only that the person at fault was employed by the defendant, but that the injury was inflicted while the servant was engaged in the master's business and was acting within the scope of his employment. "Outside of the scope of his employment the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant steps aside from his master's business for some purpose wholly disconnected with his employment the relation of master and servant is

suspended. The act of the servant during such interval is not to be charged to his master. This doctrine is established by substantially all the authorities." (*Johanson v. Johnston Printing Co.*, 263 Ill. 236, 240.) In *Clark v. Wisconsin Central Ry. Co.*, 261 Ill. 407, it is said: "When not engaged in his line of employment, but in pursuing purposes of his own the master would not be liable for his negligence, even though he was at the time using the instrumentalities furnished him by the master to perform the duties of his employment," citing the case of *Slater v. Advance Thresher Co.*, 5 L. R. A. (N. S.) 598, 97 Minn. 305, as "a well considered opinion" on this question. In the Minnesota case the defendant had furnished its agent with an automobile for the use of the latter in performing the duties of his employment. After business hours, and while the agent was driving the automobile on a mission of his own, plaintiff's team became frightened by reason of the negligent manner in which the agent operated the automobile, and ran away, causing the injury to the plaintiff. It was held that the defendant was not liable for the reason that the negligent act complained of was committed by the defendant's servant while he was "at liberty from the service of the master, and pursuing his own ends exclusively." This case was again cited with approval by the Supreme Court in *Arkin v. Page*, 287 Ill. 420, 422, and by the Appellate Court in *Miller v. National Automobile Sales Co.*, 177 Ill. App. 367, and *Szszatkowski v. Peoples Gas Light & Coke Co.*, 209 Ill. App. 460, 463, and it is supported by the general current of authority. (*Stone v. Hills*, 45 Conn. 44; *McCarthy v. Timmins*, 178 Mass. 378; *Steffen v. Mc-Naughton, supra; Maddox v. Brown*, 71 Me. 432; *Drobnicki v. Packard Motor Car Co.*, 212 Mich. 133; *Provo v. Conrad*, 130 Minn. 412; *Orr v. Thompson Coal Co.*, 219 Ill. App. 116; 18 R. C. L. sec. 267; 22 A. L. R. 1397 note.)

While plaintiff's counsel do not deny that the gen-

eral rule is as above stated, they contend that even if Auer departed from defendant's business when he took the car home on the evening in question, such departure had ceased when he started back to the garage after dinner, and that in going back to the garage he was acting in the course and within the scope of his employment "because it was his duty to return the car" to the garage. There are cases which so hold upon facts similar to the facts of this case. *Riley v. Standard Oil Co.*, 231 N. Y. 301, is a case of that character. The decision in that case, however, was by a divided court, the majority opinion being opposed by a vigorous and able dissent on the part of three of the seven justices. In many of the other cases to which we have been referred in which a like conclusion was reached, the facts introduced some additional element of liability. For example, in *Chicago Consolidated Bottling Co. v. McGinnis*, 86 Ill. App. 38, the facts were such that the rule applicable thereto was stated as follows: "If the servant, in driving his master's team on his master's business, chooses an indirect route, or deviates from his direct route for purposes of his own, *and is yet engaged in performing the master's work in such indirect manner,* the master may still be held liable." This was the principle applied in *Carl Corper Brewing & Malting Co. v. Huggins*, 96 Ill. App. 144, and in *Donahue v. Vorenberg*, 227 Mass. 1. The same rule is also stated in the following language in *Ritchie v. Waller*, 63 Conn. 155, 163: "If the servant, in going *extra viam,* is really engaged * * * within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own."

In other cases cited by plaintiff's counsel it appeared that the servant, while engaged in the master's service, asked and obtained his master's permission to use the master's automobile for some temporary private purpose of his own, and was directed to have the car thereafter at a designated place at a specified

time for the master's use, and the accident happened while he was following such directions and after his own purpose had been accomplished. Such are the cases of *Heelan v. Guggenheim*, 210 Ill. App. 1, and *McKiernan v. Lehmaier*, 85 Conn. 111; and the same element of *implied authority*, arising out of acquiescence in the servant's use of the car, is a distinguishing feature in *Swancutt v. W. M. Trout Auto Livery Co.*, 176 Ill. App. 606; *McKeever v. Ratcliffe*, 218 Mass. 17; *Ferris v. McArdle*, 92 N. J. L. 580; *Bila v. Bloomingdale*, 184 App. Div. 65, 171 N. Y. Supp. 434, and *Tuttle v. Dodge*, 80 N. H. 304, cited by plaintiff's counsel. In *Graham v. Henderson*, 254 Pa. 137, also cited by counsel, it was held that if a chauffeur uses his employer's car for his personal use without the consent and in disregard of the orders of the employer, "it would follow that during the time he employed the car, *down to the time he returned it to its proper place,* the relation of master and servant * * * was wholly suspended," and the employer would not be liable for the acts of the chauffeur during that time; while, if permission or "license" had been given, such license would expire when its purpose was accomplished, and the return trip would be on the master's business.

But whether the distinction noted in the case last cited is valid or not, there are many cases, constituting what is believed to be the greater weight of authority, which hold that where a servant, without the express or implied consent of the master, takes his master's vehicle upon a journey of his own for a purpose wholly disconnected from the work which he is hired to do, the relation of master and servant is suspended during the whole of such journey, that is, that such relation is not resumed until such unauthorized journey is ended; and if a third party sustains an injury through the servant's negligence while the servant is returning the vehicle to the place from which

he has so taken it, the master is not liable. *Brinkman v. Zuckerman*, 192 Mich. 624; *Hartnett v. Gryzmish*, 218 Mass. 258; *Fleischner v. Durgin*, 207 Mass. 435; *Danforth v. Fisher*, 75 N. H. 111; *Cannon v. Goodyear Tire & Rubber Co.*, 208 Pac. 519; *Healey v. Cockrill*, 133 Ark. 327; *Crady v. Greer*, 183 Ky. 675; *Colwell v. Ætna Bottle & Stopper Co.*, 33 R. I. 531; *Lotz v. Hanlon, supra; Gousse v. Lowe*, 41 Cal. App. 715; *Patterson v. Kates*, 152 Fed. 481, and *Mitchell v. Crassweller*, 13 C. B. 237.

In the case last cited, the defendants were ironmongers who were possessed of a horse and cart with which their carman had been out to deliver goods. Returning home at a late hour in the evening, the carman drove up to the shop door to get the keys of the stable for the purpose of putting up the horse and cart. With the keys he was about to proceed to the stable, which was in an adjoining street, and within 500 yards of the shop, when defendants' foreman, who was ill, asked the carman to drive him a part of his way home. Without obtaining his employers' permission, the carman drove the foreman part of the way home. In returning thence to the stable he accidently ran over the plaintiff. The court held the employers were not liable, saying: "Where a servant, instead of doing that which he was employed to do, does something which he was not employed to do at all, the master cannot be said to do it by his servant, and therefore he is not responsible." In *Colwell v. Ætna Bottle & Stopper Co., supra,* the defendant's chauffeur, having finished his work for the day, was directed to take his master's automobile into the garage and wash it and put it up for the night, but instead of so doing, he took the car to a restaurant to get his supper, and while returning to the garage negligently injured the plaintiff. The court said: "He had no authority, either express or implied, to use the machine * * * for his own convenience

in going to get his supper.  His use of the automobile *from the time he left the Bradford street garage and during the whole circuit that he made from that point * * * back to the Bradford street garage,* was unauthorized and beyond the scope of his employment." Similar expressions are to be found in several of the cases last above cited, in all of which the driver was "on his way back" from an unauthorized journey with his master's vehicle when the accident happened.   In effect, these cases hold that the servant's act in returning the car to the place from which he took it is a *moral duty* to return a thing he had wrongfully taken away, which would be just as potent if he were not a servant.

Upon the authority of these cases and upon the facts as we find them to be, we think it must be held that at the time of the accident in question, the defendant's driver was not acting in the course and within the scope of his employment, and therefore the defendant is not liable for the injurious consequences of his negligence.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*

BARNES and GRIDLEY, JJ., concur.

# CASES

DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.