# John Kavale, Appellee, v. Morton Salt Company, Appellant.

## Gen. No. 30,747.

1. MASTER AND SERVANT—*when direction of verdict for defendant in action for injury to third person proper notwithstanding making of prima facie case by plaintiff.* Evidence in an action for injury by defendant's employee to a third person, such as to require a finding that the employee was acting without the scope of his employment, held to warrant direction of a verdict for defendant, notwithstanding plaintiff had made out a prima facie case by proof that he was injured by the negligence of the employee while himself in the exercise of due care for his own safety.

2. MASTER AND SERVANT—*when evidence raises question for jury whether negligent act of servant injuring third person was within scope of employment.* Evidence, in an action for injury to a pedestrian by an automobile being negligently operated by defendant's servant, held to raise a question of fact for the jury as to whether, at the time of the injury, the servant was driving the automobile on the business of the master, or using it for purposes of his own outside the scope of his employment.

3. MASTER AND SERVANT—*sufficiency of evidence to support verdict for injured third person on issue whether negligent act of servant causing injury was within scope of employment.* Verdict, in an action for injury to a pedestrian by an automobile being negligently operated by defendant's servant, that at the time of the injury the car was being used by the servant within the scope of his employment, held not so manifestly against the weight of the evidence as to require reversal.

4. DAMAGES—*when verdict of $31,000 not excessive for hand, arm and leg fractures suffered by pedestrian struck by negligently operated automobile.* Judgment for $31,000 for injuries to a pedestrian in the act of boarding a street car, resulting from being struck by a negligently operated automobile, held not so excessive as to warrant interference therewith on appeal, where the injuries included a compound fracture of the left hand, a compound fracture of both bones of the left forearm, and a compound fracture of both bones of the left leg, necessitating the victim's confinement in a hospital for about a year and preventing him from returning to his work as a carpenter for 18 months and even then with permanently reduced efficiency.

THOMSON, J., dissenting.

Appeal by defendant from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed. Opinion filed October 13, 1926. Rehearing denied October 27, 1926.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellant; WEYMOUTH KIRKLAND, JOSEPH D. RYAN and WILLIAM H. SYMMES, of counsel.

SCHUYLER, ETTELSON & WEINFELD, for appellee; WILLIAM C. GRAVES, EDWARD J. HENNESSY, CARL J. APPELL and GEORGE W. D. LEDERER, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff was struck by defendant's truck in Twenty-Second Street, just west of Wabash Avenue and severely injured. He brought suit against the defendant and the chauffeur who was driving the truck to recover damages. The suit was dismissed as to the chauffeur and after a trial there was a verdict and judgment in plaintiff's favor for $31,000.

The evidence shows, and there is no contention to the contrary, that the truck was being driven negligently by Joseph Peter Fotre, who was in the employ of the defendant, and that plaintiff was in the exercise of due care for his own safety. The controversy is whether at the time of the accident the truck was in use for defendant's benefit and on its account, or whether the defendant's chauffeur was driving it at the time in question on a frolic of his own. The court instructed the jury that no recovery could be had unless they believed from the evidence that the truck was being operated for the use of the defendant in connection with its business at the time of the accident.

The evidence shows that the chauffeur had been employed by the defendant for three or four years and

Kavale v. Morton Salt Co., 242 Ill. App. 205.

had driven the truck in question for a considerable period of time before the accident occurred; that the truck was a large one, having a capacity of about 7½ tons; that on Saturday, October 27, 1923, the chauffeur reported for work at defendant's place of business, which was located near East South Water Street and the railroad tracks, which is a short distance east of Michigan Avenue; that after delivering two loads of salt on that morning, he returned to defendant's place of business at about eleven o'clock in the forenoon for further orders and was told by those in charge to await further instructions. The chauffeur waited until about twelve o'clock when he was advised that there was nothing further for him to do that day to take the truck to the garage where it was kept by the defendant, the garage being located at No. 2625 South Wabash Avenue, Chicago. The chauffeur left with the truck at about 12:15 or 12:25 and started down Wabash Avenue toward the garage and about 3:15 o'clock in the afternoon he drove the truck westerly in Twenty-Second Street, struck the defendant who was out in the roadway of Twenty-Second Street just west of Wabash Avenue and who was in the act of boarding a street car at that place. Plaintiff was thrown to the ground and when the truck stopped, which was done within a short distance, he was found underneath the truck and caught in the drive chain. Police officers came and endeavored to extricate him, but were unable to do so until they called some members of the fire department who melted a link in the chain and thereby released the defendant.

The evidence further shows there is a double line of street car tracks in Twenty-Second Street; that the street cars do not run east of Wabash Avenue but come to a stop a few feet west of Wabash Avenue on the south car track and that the cars in going west a short distance cross over to the north or westbound track. At the time in question the street car had stopped at

its usual place, just west of Wabash Avenue. The men in charge of the car were adjusting the trolley pole, and five or six persons, including plaintiff, were out in the street waiting to get in the back door, which was located on the north side, at the east end of the street car. The doors of the car were just being opened when the truck driven by defendant's chauffeur turned from Wabash Avenue west and struck plaintiff and others. Three witnesses for the plaintiff testified that the truck came from the north in Wabash Avenue and turned west in Twenty-Second Street. The chauffeur of the truck testified that he drove the truck north in Wabash Avenue and turned west in Twenty-Second Street. Police officers who came within a few moments after the accident testified that the chauffeur was intoxicated; that while he was able to talk and walk around, he stumbled and "wabbled"; that he was placed under arrest and taken to the police station. The captain of police testified that about 6:30 o'clock on the same evening, which was about three hours after the accident, he talked to the chauffeur and that he was not sober at that time. After the chauffeur was dismissed out of the case he was called as a witness for the defendant. He testified that he left defendant's plant at East South Water Street on the day in question at about 12:20 or 12:25 p. m., having been told that there was no further work for him to do that day and to take the truck to the garage, located at No. 2625 South Wabash Avenue, which is on the east side of that street; that one of the defendant's employees who was at defendant's place of business asked him if he would haul from defendant's place of business some kindling wood to the employee's home and the witness said that he would; that thereupon the employee, whose name the chauffeur did not recall, loaded some boards into the truck and that he, the chauffeur, together with another one of defendant's employees named Dominick, started with the truck

down Wabash Avenue to deliver the wood at the employee's home, which was located near Twenty-Third Street and Wentworth Avenue; that the truck was driven south in Wabash Avenue and when they reached Sixteenth Street the chauffeur and Dominick stopped and had something to eat at a restaurant. The chauffeur further testified that after they had eaten their dinner, he drove the truck, Dominick going with him to Twenty-Third Street and Wentworth Avenue and unloaded the wood in defendant's employee's yard, the employee not being home at that time; that after the wood was unloaded, they drove about one-half block north in Wentworth Avenue to Alexander Street an east and west street, which runs west only from Wentworth Avenue to Dominick's boarding house; that he and Dominick went into the boarding house and the landlady prepared something for them to eat; that they ate and that he drank a couple of glasses of wine; that they were at this place about 1½ hours; that he and Dominick then decided to go to a barber shop which was located on Twenty-Third Street between State and Wabash Avenue; that he drove the truck to that place, Dominick being with him; that when they came to the barber shop, they saw that it was occupied so that they could not be accommodated and then he decided to drive east to Wabash Avenue and go to another barber shop which was located somewhere near Twenty-Second Street and Wentworth Avenue; that he drove the truck east to Wabash Avenue, then turned north to Twenty-Second Street and as he turned the corner west in Twenty-Second Street he struck plaintiff. The chauffeur further testified that prior to that time he had hauled kindling wood from defendant's place of business for other employees of the defendant. There is some dispute in the evidence whether he had on prior occasions received permission to do so. Witnesses for the defendant testified that in doing some repair-

ing and remodeling at the plant, there was some kindling wood that the defendant wanted to get rid of and had given permission to have it hauled in defendant's trucks to the employee's home who might make a request for it; that on each occasion it was necessary for the persons hauling the lumber to get permission to do so; that Fotre, the chauffeur of the truck in question, did not get permission on the day in question and that they saw no wood in the truck when it left defendant's place of business.

Captain Charles L. Larkin of the police department testified that he saw the chauffeur of the truck on the day of the accident at the police station on South Clark Street, about 6:30 p. m., the chauffeur being locked up in the station; that at that time the chauffeur was intoxicated; that he talked with the chauffeur and asked him how the accident occurred and that the responses of the chauffeur were not altogether intelligent; that the chauffeur told him that he had hauled two loads of salt in the morning of that day, then went back to the defendant's plant and got some wood; that the chauffeur then described where he drove the truck and the wood, and the captain then testified that the chauffeur "did not seem to be able to tell where he did deliver the wood."

The defendant contends that the court should have directed a verdict in its favor as requested, for the reason that the evidence discloses that at and prior to the time of the accident, the chauffeur was acting outside of the scope of his employment; that he was not pursuing any purpose of the defendant. The plaintiff admits that if the evidence showed this fact to be as the defendant contends, no recovery could be had. But plaintiff contends that he having made out a prima facie case, under no state of facts would the court be warranted in instructing for the defendant. We think the contention of the plaintiff in this respect is contrary to the law. Plaintiff made out a prima

facie case by proving that he was in the exercise of ordinary care for his own safety and was struck and severely injured through the negligence of the driver of defendant's truck and by further invoking the presumption which the law raises from the facts of ownership of the truck and employment of the driver to the effect that the truck was being used pursuant to the defendant's business at the time in question. Plaintiff offered no direct evidence on the question whether the truck was being driven at the time in question by the chauffeur in the course of his employment; so that plaintiff's case rested on the presumption of this fact. If in this state of the record the defendant then put in evidence of such a character that would lead all reasonable minds to conclude that the truck was not being driven on defendant's business, then a directed verdict would be proper. *Foster v. Wadsworth-Howland Co.*, 168 Ill. 514. The presumption in such a case would be entirely destroyed by the evidence. But the plaintiff further contends that the evidence in the record is such that the question whether the chauffeur was driving the truck on a frolic of his own or in connection with the business of the defendant, was a question of fact for the jury. We think this contention is borne out by the record.

Defendant's place of business is located about three miles from the garage, 2625 South Wabash Avenue. The evidence tends to show that the chauffeur left defendant's plant at about 12:15 to 12:25 in the afternoon and that the accident occurred almost three hours thereafter. Of course, it would not take nearly this length of time to drive from the plant to the garage. But the chauffeur stopped on the way and had dinner. He was delivering wood which we think the jury were warranted in finding was in part for the benefit of the defendant. The chauffeur testified that he took this wood to Twenty-Third Street and Wentworth Avenue, which is but a few blocks west of

Wabash Avenue. He testified that he did not know the name of the party that he delivered the wood to, but that he was employed by the defendant. And so far as the record discloses no effort was made to find this person. The captain of police testified that when he talked to the chauffeur, some time after the accident, the chauffeur was unable to tell him where he delivered the wood and that the chauffeur was intoxicated. The chauffeur testifies as to the various routes he took, but it is clear that the jury would be warranted in disbelieving his testimony, because three witnesses testified that when he turned into Wabash Avenue he came from the north, while he testified that he came from the south. And while the evidence tends to show that the wood had been unloaded at the time plaintiff was struck, yet this is not at all clear, because the bed of the truck was high and there were but a few boards in the bottom of it, and no one looked into the truck to see if it was empty at the time plaintiff was injured. We think that whether the chauffeur was driving the truck at the time of the accident in connection with defendant's business was a question for the jury. They might find that although he "was serving defendant badly, defendant was liable." *Moore v. Rosenmond*, 238 N. Y. 358. In that case it was decided that whether a chauffeur who struck and injured a person was serving his master, the defendant, at the time of the accident, was a question for the jury. We think that case is much stronger on the facts than the case before us. There the defendant, who employed the chauffeur, lived at Eightieth Street and West End Avenue, New York City. His place of business was on Forty-Ninth Street. The chauffeur drove the defendant from his home to his place of business and was told by his employer to drive to Yonkers and Mount Vernon, which was some distance northeast of defendant's home. The chauffeur did so, and then turned back, but did not take Rosenmond's mother-in-

law to his home as he was told.    When he reached
Eighty-Fifth Street, which was five blocks north of de-
fendant's home, he picked up a friend and had some
drinks.    They then drove to Ninety-First Street, still
farther north and had some more drinks and picked
up another friend and then drove back down to Forty-
Ninth Street, where they had some more drinks and
where he was to have the car repaired but did not do
so.    He and his friends started toward defendant's
garage, which was located near his home, and when
they reached Fifty-Third Street they had some more
drinks with another friend and then drove towards de-
fendant's garage when the accident occurred.

The court of appeals of New York held that whether
the chauffeur was serving his master at the time was
for the jury.    Judge Pound in delivering the opinion
of the court after stating the above facts said: (p. 359)

"This evidence was not sufficient in law to destroy
the presumption of control, although it might have
been in fact.    The jury might have found that Dollar
(the chauffeur) had started down to Forty-Ninth
street on defendant's business, got drunk, got to Forty-
Ninth street, but neglected the business, and started
back to defendant's garage without having the
windows fixed.    Although Dollar was serving defend-
ant badly, defendant was liable.    *Bloodgood v. Whit-
ney*, 235 N. Y. 110, 114.    They might, on the other
hand, if they drew from the testimony the inferences
most favorable to defendant, have found that Dollar
had abandoned his employer's business when he
picked up Corbin at the Eighty-Fifth street garage,
and that the time was then devoted to a personal
spree, until a belated sense of duty inspired them to
start back to the garage.    It was, however, for the
jury to draw the inferences."    The judgment for
plaintiff was reversed on account of the erroneous
admission of evidence.    The court said that "in a
doubtful case, where proofs are pitted against a pre-

sumption, where the doctrine of *respondeat superior* is invoked to impose liability on defendant without direct fault on his part, it is but fair that the rules of evidence should be properly applied."

The rule of law that fixes liability on the master for the acts of his servant is clear and well established—the master is not liable unless the servant was acting within the scope of his employment. But the difficult question to determine is whether the particular act for which liability is sought to be imposed was committed by the agent within the scope of his employment. This obviously can be determined by no fixed rule, but must be ascertained from the facts in each particular case. *Orr v. Thompson Coal Co.,* 219 Ill. App. 116. Upon a careful consideration of all the evidence in the record, we are of the opinion that the question involved was a proper one for the jury. And we are further of the opinion that we would not be warranted in saying that the finding of the jury in favor of plaintiff is against the manifest weight of the evidence. As Judge Pound said in the *Moore* case, the inferences to be drawn from the evidence were for the jury.

The defendant further contends that the judgment is excessive and should be reversed for that reason. The record discloses that plaintiff was a carpenter by trade, 45 years of age and was earning about $65 per week at the time he was injured. He was knocked down by the truck and when the truck stopped defendant's arm was caught in the drive chain so that he could not be extricated. The police who arrived almost immediately after the accident endeavored to cut the chain, but were unable to do so. The fire department was then called and with the use of an acetylene torch they melted a link in the chain and plaintiff's arm was then released. He was taken to the hospital and it was found upon examination that plaintiff had suffered a compound fracture of the fourth meta-

carpal bone of the left hand, a compound fracture of both bones of the left forearm and a compound fracture of both bones of the left leg. The surgeon testified that when plaintiff was brought into the hospital the fractured ends of the leg were protruding through the flesh; that the leg was bent at a right angle and it was a question whether the leg would have to be amputated. The leg was then placed in a fracture box for a long time and dressed. The arm was operated on in about a week or ten days. It was necessary to use a steel plate to hold it in place. The injured leg could not be dressed for some time afterwards on account of dirt being ground into the flesh. After the fracture of the leg was reduced, pieces of bone came out from time to time. The defendant was confined to the hospital for about a year and he was able to return to work about 18 months after the accident. The surgeon testified on the trial that in his opinion if plaintiff worked at his trade as a carpenter and was required to climb ladders, the leg would be disabled at least 50 per cent.

It is obvious that plaintiff suffered very greatly; that his injuries are permanent and he testified that he still felt the effects of his wounds. In *Posch v. Chicago Rys. Co.*, 221 Ill. App. 241; and *Lagatutte v. Chicago Daily News*, 239 Ill. App. 675, we said that we could not be unmindful of the fact that the money value of life and health is appreciating and the purchasing power of money depreciating during recent years. In the latter case we affirmed a judgment of $35,000, where a boy was so injured as to require his leg to be amputated below the knee. In view of all the evidence in the record, we are of the opinion that the judgment is not of such an amount that would warrant interference on our part.

The defendant further contends that it was error to permit the jury to take X-ray photographs or skiographs, to the jury room over defendant's objection,

for the reason that they were unintelligible. The photographs were introduced in evidence without objection and upon an examination of them, we think the jury would have no difficulty in understanding them. Our Supreme Court has held it is not error to allow the jury to take such exhibits with them to the jury room. *Chicago & J. Electric R. Co. v. Spence,* 213 Ill. 220.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

TAYLOR, J., concurs.

MR. JUSTICE THOMSON, dissenting: It was incumbent on the plaintiff to prove by a preponderance of the evidence that at the time he was struck and injured by the truck in question, it was being used by Fotre within the scope of his employment; that he was engaged in some duty he owed the defendant as its employee and was not driving his truck on an errand, or for some purpose, of his own. It being established that Fotre was the defendant's employee and that the truck he was driving belonged to it, a legal presumption arose, to the effect that when the truck injured the plaintiff it was being used in the course of the defendant's business. In this manner, a prima facie case was made out for the plaintiff on the issue involved. The burden of going forward with the evidence on this issue then shifted to the defendant. In my opinion, the evidence thereupon submitted by the defendant was clearly to the effect that the truck was not being used by Fotre in the course of its business, when the plaintiff was injured. The testimony of the defendant's witnesses showed that at that time there was no wood in the truck and that Fotre had delivered the wood he removed from defendant's plant at the request of one of its employees, at the home of the latter, some time before plaintiff was injured. There

is no evidence to the contrary in the record. The evidence is further to the effect that after the wood had been delivered Fotre and Dominick started out on a "frolic of their own," to use the frequently quoted phrase of Baron Parke in *Joel v. Morison,* 6 C. & P. 501. The question whether the truck was being used in the course of defendant's business, in the operation involving the hauling of the wood, is really immaterial. The plaintiff was not injured in the course of that operation. After that matter had been concluded, Fotre, in my opinion, clearly passed beyond the limits of his master's work and went about his own personal affairs. He and Dominick started on an entirely new and independent journey which had nothing at all to do with their employment. They went to the place where Dominick lived and there they spent an hour and a half eating and drinking and then they started out in search of a barber shop where they might procure a Saturday afternoon shave. The first one they went to was full and so they drove on, and while they were on their way to another, plaintiff was injured. Of course, as was held in *Chicago Consolidated Bottling Co. v. McGinnis,* 86 Ill. App. 38, if a servant, in driving his master's vehicle on his master's business, chooses an indirect route, even for some purpose of his own, *and is yet engaged in performing the master's work in such indirect manner,* the master may still be liable. But the evidence submitted by the defendant, to meet the legal presumption, with the help of which plaintiff had established his prima facie case, showed clearly, in my opinion, that this is not a case in which the servant went in a roundabout way to perform his master's business. Fotre and Dominick were using the truck in the course of their own affairs solely, when they ran into the plaintiff, and they had been so engaged for some time before that.

In my opinion the facts established by the evidence in the case at bar make it a stronger case for defend-

ant than any of the cases of *Orr v. Thompson Coal Co.,* 219 Ill. App. 116 (opinion by Mr. Justice Heard, now a member of our Supreme Court); *Cohen v. Fayette,* 233 Ill. App. 458, decided by the second division of this court, in which the Supreme Court denied certiorari (after which, the order of reversal in this court was changed to one reversing and remanding); *Szszatkowski v. Peoples Gas Light & Coke Co.,* 209 Ill. App. 460; or *Navratel v. Curtis Door & Sash Co.,* 214 Ill. App. 627, the latter affirmed by our Supreme Court in 290 Ill. 526, in all of which it was held the master could not be held liable because, at the time the injuries there involved were inflicted, the servant had departed from the performance of his master's business and was engaged in the pursuit of his own affairs.

This is not a case where the evidence, submitted by the defendant to meet the prima facie case established by the plaintiff, is a denial of evidence which went to make the plaintiff's prima facie case. That prima facie case on the real issue between the parties was made out by a legal presumption which arose as a result of the facts of ownership of the truck and employment of Fotre, which facts were not controverted. And the evidence, submitted by the defendant to overcome that legal presumption, stands in this record without contradiction. In that situation, what our Supreme Court said in *Shannon v. Nightingale,* 321 Ill. 168, in my opinion, does not apply. As the record stood in the case at bar, at the close of all the evidence, I am of the opinion the trial court erred in denying defendant's motion for a directed verdict.

But even if it should be considered that what the Supreme Court said in the *Shannon* case does apply to the facts involved here, I am further of the opinion that the verdict and judgment for the plaintiff are against the manifest weight of the evidence. As already noted, the evidence as to the doings of Fotre

and Dominick, up to the time plaintiff was injured, stands in the record without contradiction. The plaintiff contends that as Fotre was contradicted as to the direction he was driving his truck on Wabash Avenue when he turned into Twenty-Second Street, his story as to what he had been doing since leaving the defendant's plant, was for the jury, and that the jury would be justified in refusing to believe that story as it was not corroborated by other credible evidence. But there was evidence of other circumstances, which did corroborate Fotre's story as to what he had been doing between noon and 3:15 o'clock. That there was a lot of wood at the defendant's plant, the refuse from some remodeling work that had been done, which defendant was glad to get rid of and which the men were at liberty to take, much of which they had taken away in defendant's trucks at different times, is not contradicted. That Fotre had been doing something beside driving his truck to the garage, between the time he left defendant's plant about noon and the time he ran into the plaintiff on Twenty-Second Street just around the corner from Wabash Avenue, about 3:15 o'clock, is certain. And that he had been where he had some drinks is also certain. There is nothing about Fotre's story that makes it incredible as counsel for plaintiff contend. On the contrary, it seems quite the opposite. The question of whether the truck was being driven north or south on Wabash Avenue, when it turned into Twenty-Second Street, is quite immaterial. Even if it was being driven south, it was not on the way to the garage as plaintiff attempts to make out. The uncontradicted evidence is that Fotre and Dominick were trying to find a barber shop where they could get shaved without waiting. In so doing they were not acting within either the real or apparent scope of their employment or their employer's business.

The liability of a master for the consequences of the negligent acts of his servant is a vicarious one, and the law prescribing the limits of that liability are well established. By a long line of decisions in this State and in other jurisdictions, it has come to be the law that the doctrine of the liability of the master for the wrongful acts of his servant, is predicated upon the maxims *"respondeat superior"* and *"qui facit per alium, facit per se."* It rests upon the doctrine of agency. The universal test of the master's liability is whether there was authority, express or implied, for doing the act; that is, Was it done in the course and within the scope of the servant's employment? If it be done in the course of and within the scope of the employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. But a master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business.

Applying the law as thus laid down to the facts presented in this case, I am unable to concur in the decision as announced in the foregoing opinion. I do not disagree with what is said in that opinion on the question of the amount of the damages and the action of the trial court in permitting the X-ray plates to go to the jury, but, on the merits, under the law as applied to the facts which are not disputed in the record, I am of the opinion that the defendant is not responsible in damages for the injuries caused to the plaintiff by the servant's negligence, as the latter is clearly shown not to have been acting within the course of his employment when the plaintiff received the injuries complained of.