Helen Tarka, a Minor, by her Mother and Next Friend, Anna Tarka, Appellant, v. G. D. Pratt and Henry G. Guillaume, Trading as Pratt-Guillaume Company, and Edwin F. Daniels & Company, Appellees.

Gen. No. 33,804.

404

MURPHY O. TATE, for appellant.

No appearance for appellees.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiff, Helen Tarka, a minor, by her next friend, Anna Tarka, brought suit against G. D. Pratt and Henry C. Guillaume, doing business as Pratt-Guillaume Company, and Edwin F. Daniels & Company, a corporation, to recover for personal injuries sustained by her on November 6, 1927. At the conclusion of the plaintiff's case, the defendant Edwin F. Daniels & Company, a corporation, was dismissed out of said suit on motion of plaintiff, and it becomes unnecessary to further refer to this defendant.

The declaration consisted of three counts. The first count charged that the defendants, Pratt-Guillaume Company, were engaged in the business of hauling and cartage and were in possession and control of a certain motor truck, driven along Webster Avenue in the City of Chicago, and that said truck was so carelessly and negligently operated that, as a result, a certain automobile in which plaintiff was riding as a passenger was caused to and did collide with the truck, and plaintiff was injured.

The second count charged negligence on the part of the defendants in their failure to have a tail light on said truck during the hours of the night when the accident occurred.

The third count charged the defendants with negligence in permitting said truck to stand motionless on Webster Avenue without a light on said truck and failure to warn plaintiff of its presence on said street.

Defendants Pratt and Guillaume filed a plea of the general issue.

At the conclusion of plaintiff's evidence, the court instructed the jury to return a verdict finding the defendants not guilty, and judgment was entered upon the instructed verdict.

Defendants have failed to follow this appeal and we have not been aided in our consideration of the case by any brief or argument on their behalf.

From the facts it appears that the plaintiff was riding on the right-hand side of the driver in a Ford roadster going west on Webster Avenue in the City of Chicago. It was in the nighttime and the street was dark. The Ford roadster was proceeding at the rate of from 15 to 18 miles an hour. The truck in question was standing upon the street and had no lights and no warning was given to plaintiff or the driver of the Ford roadster. Neither the driver nor plaintiff saw the truck until they had crashed into it and, as a result of the collision, plaintiff was badly injured. It appears from the evidence, although not clearly, that the defendant maintained a garage at Southport and Clybourn Avenues, where there were a number of cars or trucks belonging to the defendants. It also appears from the evidence that there were trucks other than those belonging to the defendant and that the truck in question was the property of Edwin F. Daniels & Company, a corporation, but which on the night in question was left in defendants' garage.

Among other employees, the defendant had a man by the name of Holmeide, who was employed as a mechanic, and whose duties were to repair trucks, get repairs and parts for trucks, and service those which were broken down while in use throughout the city. In the doing of this work, he used his own car, but the gasoline and oil necessary for the operation of the car was furnished by the defendants. This car was kept at the garage at Southport and Clybourn Avenues.

Holmeide testified that he rode home in his car at night, but brought it back each day because it was used in the business of the defendants. On the night in question, he started home at 12 o'clock midnight, and got as far as Robey and Webster Streets when the uni-

versal joint of his car broke down. He then pushed it over to the curb and went back to the garage. There he got the night man and they took the first truck in line, which happened to be the Daniels' truck and proceeded toward the point where Holmeide's car was standing. The gasoline, however, gave out and it became necessary to leave the truck while they returned to the garage and got an additional supply of gasoline. There was no light on the truck.

Objection was made to certain questions asked concerning the duties of the night man employed by the defendants and the objections sustained. We believe that the position occupied by the night man, together with his duties, was pertinent to the issue as bearing upon the question as to whether or not he was acting within the scope of his employment at the time he and Holmeide took the truck out of the garage. It appears that the purpose of taking the truck was to pull Holmeide's car back to the garage. We gather from the record that the court, in directing the jury to return a verdict in favor of the defendants, was evidently of the opinion that neither Holmeide nor the night man was acting within the scope of his employment in the operation of taking the truck out of the garage for the purpose of pulling back Holmeide's car. In considering this question, it should be borne in mind that a peremptory instruction should not be given where there is any evidence which fairly and reasonably tends to support the allegations of the declaration. *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476.

At the time Holmeide left the premises of the defendants and started home in his car, he was not engaged in the business of the defendants and if the accident in question had been caused by reason of a collision with his car, the instructed verdict would have been proper. When, however, he returned to the garage and procured the services of the man left there in

charge by the defendants and, with this man, proceeded in the truck to pull his car, it raised a question of fact whether or not the services then performed by these two men or either of them were for the benefit of the employers and in and about the employers' business. The fact that the truck was left at the place in question by the servants of the defendants, in and of itself, would furnish some evidence, until overcome, that it was done in and about the defendants' business. The plea of general issue denied only the wrongful act. It does not put in issue the ownership, operation, nor control of the instrumentality. *Mueller v. Hayes*, 321 Ill. 275.

The fact that the automobile was used by the defendants in and about their business might raise an inference that Holmeide and the night man were, in fact, servicing the automobile of Holmeide in order that it might be used in and about the business of the defendants when it had been repaired. The night man was in charge of the garage and the trucks and automobiles on the premises, from midnight on, and in proceeding with the truck to pull in the automobile may well have intended doing it for the benefit of his employers, inasmuch as the automobile was used in the company's business. *Kavale v. Morton Salt Co.*, 242 Ill. App. 205.

If, in fact, the service was being rendered for the purpose of Holmeide, the court properly instructed a verdict. If, however, it was rendered for the benefit of the defendants, it might well be argued that it came within the scope of the employment of the servants engaged in the operation.

The fact that the defendants furnished the gasoline and oil for the automobile and used it for their own purpose, would readily raise an inference, drawn from the testimony, that they would have performed the act of service on the automobile the following day with full cognizance of the facts. The fact that it was

done that night by the man left by them in charge, raises a question of fact which should have been submitted to the jury as to whether the night man was, in fact, engaged in the business of his employers when he undertook to do the act in question.

In the absence of testimony showing that the night man had no authority, it cannot be said that the evidence is of such a character that it would lead all reasonable minds to conclude that the truck was not being driven on or about defendants' business.

It might readily be inferred that it was part of the night man's duty to do the very thing in question and, in the absence of evidence to the contrary, we are of the opinion that the trial court was in error in directing the verdict at the end of plaintiff's case.

For the reasons stated in this opinion the judgment of the superior court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

RYNER, J., concurs.

HOLDOM, J., not participating.