Anna Craig, Appellant, v. Mabel Tucker, Administratrix of the Estate of Henry Tucker, Deceased, Appellee.

522

JOHN W. FREELS, for appellant; ROPIEQUET & FREELS, of counsel.

T. A. GASAWAY and BEN M. CREAMER, for appellee.

MR. JUSTICE EDWARDS delivered the opinion of the court.

Mabel Tucker, administratrix of the estate of Henry Tucker, deceased, appellee, obtained a verdict and judgment for $3,000 in the city court of East St. Louis, against Anna Craig, appellant, for the death of her son, the said Henry Tucker, his death being caused, as she claimed, by reason of the negligence of a servant of appellant in driving an automobile.

The declaration, which was in case, consisted of three counts; the first charging general negligence; the second and third averring wilful and wanton misconduct. To this the appellant filed the general issue, together with a special plea denying possession, control or operation of the car, either directly or by agent.

The facts, as shown by the proof, are that on December 27, 1930, appellant, a visitor at the home of Bertha Rochus, her sister, in East St. Louis, at about nine o'clock p. m., directed her nephew, Charles Rochus, to deliver a message to her aunt in Collinsville, and to use her Chrysler sedan. Decedent, Henry Tucker, was present at the time, and was to accompany Rochus. Appellant directed her nephew, in the presence of Tucker, to drive carefully, not too fast, to hurry home, and not to be out late.

Rochus and Tucker took the car, rode around East St. Louis for a time, during the course of which they met and took into the car two young women, Laura

Bankston and Adele Zepart; then, instead of driving northerly to Collinsville, to fulfill the errand, they drove southerly, in the opposite direction, to Maplewood, where they stopped and attended a dance for awhile; then driving still further south towards Dupo, and turning around about 10:15 p. m., driving then to East St. Louis, thence northerly to Collinsville, through Collinsville, to the end of the cement pavement, on what is known as the Lebanon road, where they stopped, and where Rochus is said to have remarked they were on the wrong road.

It appears they then turned around and started southwesterly, driving at a high rate of speed,—in the neighborhood of 50 miles an hour,—toward the business section of Collinsville. At a sharp curve in the Lebanon road, near its intersection with the Blackjack road, Rochus, who was driving, ran into a telephone pole, wrecking the car, causing his own death almost instantaneously, and inflicting injuries on Tucker from which he in a few moments died.

It further appears that during their driving, after they started, Rochus sat in the front seat with one young lady, while Tucker and the other girl occupied the back seat. Also, that another car,—a Peerless coupe, driven by one George Kosydor, and occupied by him, two young women and another young man, had been driving around with the car in which Rochus and Tucker were riding, for about two hours prior to the accident, and that at the time of its occurrence the Kosydor car had stopped and was waiting at a curve for Rochus' car to come up.

The aunt to whom the message was to have been delivered lived on a cross street, a few blocks north of the Lebanon road. The car in question had run past such street, going easterly, and on its return was,—at the scene of the accident,—about 10 or 12 blocks distant from the aunt's home.

The principal question in the case is whether, at the time of the collision, Rochus was acting as the servant of appellant, or was pursuing his own interests exclusively. The law governing the question is well understood, though somewhat difficult of application. It must appear that the person inflicting the injury was, at the time, in the employ of the person sought to be charged, and engaged in the business of the master, as well as acting within the scope of his employment. If the servant, at such time, was pursuing, exclusively, a purpose of his own, the master would not be liable for his negligence, though it appears he was, at the time, using instrumentalities provided by the master, necessary to discharge the functions of his agency. *Cohen v. Fayette,* 233 Ill. App. 458.

"If the servant step aside from his master's business for some purpose wholly disconnected with his employment, the relation of master and servant is suspended. The act of the servant, during such interval, is not to be charged to his master." *Johanson v. Johnston Printing Co.,* 263 Ill. 236, 240.

That Rochus, accompanied by Tucker, who had heard the directions of appellant, had departed from the business of his principal, when they procured the company of the young ladies, went in an opposite direction, to a different town, attended a dance and rode around for two hours in company with another car containing a quartette of young people, cannot be doubted, and in fact appears to be conceded by appellee, who contends that when Rochus finally started for Collinsville, the suspended agency was resumed, and that he was then acting within the scope of his employment.

It was incumbent upon appellee to show that the pleasure ride had ceased, and that at the time of the accident the suspended agency had been resumed. *Johanson v. Johnston Printing Co., supra.*

The two young women in the Rochus car, who knew all that transpired, do not testify to any fact showing

either an intention or effort to reach the house of the aunt and deliver the message. It is as probable, or more so, that Rochus was still bent upon further pleasure driving. This would seem to follow from the fact that he was driving along one of the principal city streets, when the accident happened, at the rate of approximately 50 miles an hour. This excessive speed precludes the inference that he was looking for the residence of the aunt; also, that the other car, which had accompanied them for two hours, and which had turned at the pavement's end ahead of them, was waiting, at the curve, to rejoin them. This indicates that the drivers of the cars had in mind a continuance of their pleasure trip.

We do not think that appellee has shown, by the greater weight of the evidence, that the suspended employment had been resumed at the moment of the accident. In our opinion the trial court should have awarded a new trial.

*Reversed and remanded.*